UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

M. Christopher Lockhart             *    Case No. 3:19-cv-405
6880 Sovereign Court                *
Dayton, OH 45414                    *
                                    *    Judge
And                                 *
                                    *
Evan C. Barrett                     *
19512 Shirley Court                 *
Tarzana, CA 91356                   *
                                    *
And                                 *
                                    *
Greg Bell                           *
3736 Belvo Road                     *
Miamisburg, OH 45342                *
                                    *
And                                 *
                                    *
Jim Brunke                          *
1220 Fruit Valley Lane              *
White Salmon, WA 98672              *
                                    *
And                                 *
                                    *
Julian Castelli                     *
1035 Abilene Way                    *
Park City, UT 84098                 *
                                    *
And                                 *
                                    *
Cybeck Capital VI, LLC              *
c/o Harry D. Loyle, Managing Director *
7086 Corporate Way                  *
Dayton, OH 45459-4294               *
                                    *
And                                 *
                                    *
Gary M. Kopacka                     *

1

745 Willow Overlook                              *
Alpharetta, GA 30005                             *
                                                 *
And                                              *
                                                 *
Bill Mestdagh                                    *
792 Whittier                                     *
Grosse Pointe Park, MI 48230                     *
                                                 *
And                                              *
                                                 *
Thomas J. Meyer                                  *
Diane R. Meyer                                   *
9235 Gulfshore Drive, #801                       *
Naples, FL 34108                                 *
                                                 *
And                                              *
                                                 *
James R. Sever                                   *
118 Lakewood Place                               *
Piqua, OH 45356                                  *
                                                 *
And                                              *
                                                 *
Donald Slivensky                                 *
15 W 218 87th Street                             *
Burr Ridge, IL 60527                             *
                                                 *
And                                              *
                                                 *
Donald Slivensky Living Trust, Donald            *
Slivensky Trustee                                *
529 W. 56 Street                                 *
Hinsdale, IL, 60521                              *
                                                 *
And                                              *
                                                 *
Daniel Epperson                                  *
1 Kohnle Dr.                                     *
Miamisburg, OH 45542                             *
                                                 *
And                                              *
                                                 *
Thomas W. Thompson                               *
7726 Lake Alice Road SE                          *
Fall City, WA 98024                              *

|  | * |
| Plaintiffs, | * |
|  | * |
| v. | * |

Jack Garzella
1871 E. Longbranch Dr.
Draper, UT 84020

And

JB Henricksen
2728 E 4510 S
Salt Lake City, UT 84117-4659

And

CFO Solutions, LLC
Dba Advanced CFO Solutions
c/o Statutory Agent
David Chae
6626 West Burgundy Court
Highland, UT 84003

And

John Wootton
Harward & Associates
6605 South Redwood Road, Suite 101
Salt Lake City, UT 84123

      Defendants.

---

## COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS
## AND THE COMMON LAW

---

Plaintiffs M. Christopher Lockhart, Evan C. Barrett, Greg Bell, Jim Brunke, Julian Castelli,

Cybeck Capital Fund VI, LLC, Gary M. Kopacka, Bill Mestdagh, Thomas J. Meyer and Diane R.

Meyer, James R. Sever, Donald Slivensky, Donald Slivensky Living Trust, Donald Slivensky

Trustee, and Thomas W. Thompson, by and through their Attorney, file this Civil Complaint

against Defendants Jack Garzella, JB Henricksen, John Wootton, and CFO Solutions, LLC, individually and collectively, seeking to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("the Exchange Act"), 15 U.S.C. §§78; (b) and 78t(a), and Rule 10b-5 promulgated thereunder by the U.S. Securities and Exchange Commission ("SEC"), 17 C.F.R. §240.106-5, and §§12(a)(2) and 15 of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§77l(a)(2) and 77o. Plaintiffs also assert claims for common law fraud, breach of contract, breach of fiduciary duties, and unjust enrichment.

## JURISDICTION AND VENUE FOR ALL CLAIMS

1.      The Exchange Act claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§78j(b) and 78t(a), and Rules 10b-5 promulgated thereunder by the SEC, 17 C.F.R. §240.10b-5.

2.      The Securities Act claims asserted herein arise under and pursuant to Sections 12(a)(2) and 15 of the Securities Act, 15 U.S.C. §§77l(a)(2) and 77o, and rules promulgated thereunder by the SEC.

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§1331 and 1337, and Section 22 of the Securities Act, 15 U.S.C. §77v, and/or Section 27 of the Exchange Act, 15 U.S.C. §78aa.

4.      This Court also has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1332 because there is complete diversity of citizenship and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

5.      Venue is proper in this District pursuant to 28 U.S.C. §1391(b)-(c), and Section 22 of the Securities Act, and/or Section 27 of the Exchange Act. The acts and conduct complained of herein occurred in substantial part in this District. In addition, Defendants have

conducted regular, consistent and repeated business in the Southern District of Ohio, 28 U.S.C. §1391(b) (1) and (b)(2).

6.     This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. §1367 because they are so related to the Exchange Act claims and the Securities Act claims that they form part of the same case or controversy under Article III of the United States Constitution.

7.     In connection with the acts and conduct alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including the mails and telephonic communications.

## NATURE OF THE ACTION

8.     This case involves the complete domination and management of Flying Software Labs, Inc. ("FSL") by Defendant Jack Garzella, as aided by Defendant CFO Solutions, LLC dba Advanced CFO Solutions ("Advanced CFO"), which provided Chief Financial Officer ("CFO") services on a contract basis JB Henricksen and John Wootton. FSL was a developer and marketer of software products designed to assist aviation related activities for charter flights, flight schools, and fixed base operators. Garzella, as CEO, undertook financing and stock activities that were supported by a series of misstatements, lies, contrary to direction from the Board of Directors governing FSL, and engaged in a series of self-dealing, contractual breaches, and other malfeasance that eventually resulted in FSL's bankruptcy. The Plaintiffs here are all board members, investors, and creditors of FSL who were harmed by the actions of Garzella and CFO.

## PARTIES

9.     All preceding paragraphs are incorporated herein by reference.

10.     Plaintiff M. Christopher Lockhart is a resident of Ohio and an investor in FSL via promissory notes, a shareholder of FSL, and was a member of the Board of Directors.

11.     Plaintiff Evan C. Barrett is a resident of California and a shareholder of FSL.

12.     Plaintiff Greg Bell is a resident of Ohio and an investor in FSL via promissory note and a shareholder of FSL.

13.     Plaintiff Jim Brunke is a resident of Washington and an investor in FSL via promissory notes and was a member of the Board of Directors.

14.     Plaintiff Julian Castelli is a resident of Utah and a shareholder of FSL.

15.     Plaintiff Cybeck Capital Fund VI, LLC is an Ohio limited liability corporation with its principal place of business in Ohio and a shareholder of FSL.

16.     Plaintiff Gary M. Kopacka is a resident of Georgia and_ an investor in FSL via promissory notes and a shareholder of FSL.

17.     Plaintiff Bill Mestdagh is a resident of Michigan and an investor in FSL via promissory notes and a shareholder of FSL.

18.     Plaintiffs Thomas J. Meyer and Diane R. Meyer are residents of Florida and an investor in FSL via promissory notes and Tom was a member of the Board of Advisors.

19.     Plaintiff James R. Sever is a resident of Ohio and an investor in FSL via promissory notes and a shareholder of FSL.

20.     Plaintiff Donald Slivensky is a resident of Illinois and a shareholder of FSL, and was a member of the Board of Directors.

21.     Plaintiff Donald Slivensky Living Trust, Donald Slivensky Trustee is an investor in FSL via promissory notes and a shareholder of FSL.

22.     Plaintiff Thomas Thompson is a resident of Washington and a shareholder of FSL, and was Chief Operating Officer of FSL.

23.     Daniel Epperson is a resident of Ohio and an investor in FSL via promissory notes and a shareholder of FSL.

24.     Defendant Jack Garzella is a Utah resident, and at all times relevant served as the Chief Executive Officer and Chairman of the Board of FSL.

25.     Defendant JB Henricksen is a Utah resident and served at FSL's Chief Financial Officer.  He was contracted through Advanced CFO.

26.     Defendant Advanced CFO Solutions ("Advanced CFO") is a Utah limited liability corporation.  It provided services as the contract CFO from 2015 to March 2018.  JB Henricksen was an owner and partner of Advanced CFO.

27.     Defendant John Wootton served as the Corporate Secretary for FSL and was its attorney.

**FSL Takes on New Debt**

28.     On November 21, 2016, FSL entered into a Secured Term Note with Wayne Brown Institute ("WBI Secured Note").  The WBI Secured Note was for $400,000 and was for five years.  Defendant Garzella signed the note as CEO of Flying Software.  Garzella, Henricksen, and Wootton worked to negotiate the terms of this Note.

29.     The amount and existence of the WBI Secured Note was disclosed to Flying Software's board and potential investors, but not the specific terms that were material to the running of Flying Software's business and would have been material to potential future investors, had they known about them.

30.     The undisclosed material terms in the WBI Secured Note included the following

covenants:

    a.   That Flying Software would not enter into a new secured loan or "suffer to exist any lien or encumbrance on any of its assets."  Section 3.2(C).

    b.   That Flying Software would not pay any principal or interest on another promissory note made between Flying Software and its officers, directors, members, or managers before the WBI Secured Note had been repaid. Section 3.2(D).

    c.   That Flying Software would not pay any principal or interest on any other debt obligation to anyone who was not an officer, director, member, or manager without first obtaining prior written consent from WBI.  Section 3.2(D).

    d.   That Flying Software would not make any capital expenditure in an amount greater than $25,000 without WBI's prior written consent.  Section 3.2(E).

31.    FSL, under the control of Defendants Garzella, Henricksen, Wootton, and Advanced CFO (acting through its agent Henricksen), carried on its future business without regard to these covenants.  It violated all of them and did not disclose these material terms to the Board or to future investors, including Plaintiffs.

32.    In addition, Garzella caused FSL to repay loans that he had made with FSL in violation of Section 3.2(D) of the WBI Secured Note.  On January 13, 2017, Flying Software paid $5,000 to Garzella in partial repayment of his loan to FSL.  On March 27, it repaid another $14,000 to Garzella.  On August 11, 2017, it paid another $10,000 to Garzella on his loan to FSL.  These payments were made in violation of the WBI Secured Term Note, without WBI's knowledge or consent, in preference to other investors who were not paid, at a time when Flying

Software was in need of additional cash resources and soliciting additional investment, and without informing the Board of Flying Software nor any potential or actual investors of FSL. These payments were made just after new funds entered the company and were never disclosed in the Placement Agreement or in discussions with investors. Garzella directed FSL's bookkeeper to make these payments without providing any documentation that the Board authorized these payments. Due to the abusive style of management Garzella displayed toward employees like the bookkeeper, the bookkeeper was fearful of telling others about Garzella's actions.

33.    Garzella also caused Flying Software to pay interest on a loan with James Sever and to repay a loan with Trevor Pettunnude without obtaining WBI's prior written consent. Garzella also promised to make interest payments to Thomas Meyer if he made his $500,000 convertible note investment and took in loans from other members with maturity dates prior to the WBI payoff date.

34.    Garzella violated the WBI covenants in other ways. He caused FSL to invest hundreds of thousands of dollars in the new Version 8 of the My Flight Train software without obtaining WBI's prior written consent as required by the WBI Secured Note, or Board approval.

35.    After signing the WBI Secured Note, Garzella negotiated an acquisition by FSL of Vessix, Inc. ("Vessix").

36.    The terms of the Vessix acquisition involved assumption of over $1.3 million of liens and indebtedness of Vessix that was contrary to the terms of the WBI Secured Note.

37.    Garzella failed to inform fully the Board of Directors of the obligations of the WBI Secured Note and the impact of the Vessix transaction on those terms. Instead, he told the Board that all of the Vessix debt would be restructured so as to not cause a cash crunch for the

company.

38.     Garzella's actions during this period impacted new investment, including that of the Plaintiffs. The following is a list of investors in FSL during the negotiations with WBI and after the WBI Secured Note was entered into in November 2016:

      a.  Plaintiff Don Slivensky; Promissory Note; October 11, 2016; $50,000;

      b.  Plaintiff Gary Kopacka: Promissory Note; October 11, 2016; 25,000;

      c.  Plaintiff Chris Lockhart; Promissory Note; October 14, 2016; 25,000;

      d.  Dan Epperson; Promissory Note; October 15, 2016; $25,000;

      e.  Plaintiff James Sever; Promissory Note; October 15, 2016; $25,000;

      f.  Plaintiff Bill Mestdaugh; Promissory Note; October 18, 2016; $25,000;

      g.  Jeff Call; Promissory Note; November 15, 2016; $110,000;

      h.  Plaintiff Greg Bell; Promissory Note with Warrant Coverage; December 15, 2016; $50,000;

      i.  Plaintiff Chris Lockhart; Convertible Promissory Note; December 15, 2016; $25,000;

      j.  Plaintiffs Thomas Meyer and Diane Meyer; Convertible Promissory Note; December 22, 2016; $500,000;

      k.  Jeff Call; Promissory Note; January 2, 2017; $650,000;

      l.  Jeff Call; Promissory Note; February 16, 2017; $50,000;

      m.  Chris Bridges; Unsecured Promissory Note; February 23, 2017; $230,883.18;

      n.  Eastern Aviation Fuels, Inc.; Convertible Promissory Note; March 15, 2017; $492,155;

      o.  Plaintiff Donald Slivensky Living Trust; Convertible Promissory Note; March

23, 2017; $500,000;

p. Seed Accelerator Fund 2014 LLC; Promissory Note; March 27, 2017; $15,000;

q. Eric Hannelius; Promissory Note; May 1, 2017; $25,000;

r. Ibionic Holdings, LLC; Promissory Note; June 7, 2017; $143,750;

s. Hackers/Founders 10/16/2016; Promissory Note; July 1, 2017; $50,000;

t. Plaintiff James Brunke; Promissory Note; July 25, 2017; $50,000;

u. Plaintiff Chris Lockhart; Promissory Note; July 26, 2017; $50,000; and

v. Jeff Call; Promissory Note; October 31, 2017; $15,000.

The promissory notes are collectively referred to as the "New FSL Notes."

39.    The New FSL Notes were signed by Garzella as CEO of FSL. None of the counterparties of the New FSL Notes were made aware that the WBI Secured Note prohibited repayment of any of the New FSL Notes until the WBI Secured Note was satisfied, and existence of such a covenant would have made a material impact on the investors in making the decision to loan money to FSL.

40.    Disclosure of the covenants in the WBI Secured Note to the investors would have revealed the true financial state of FSL, such that the investors would have renegotiated the terms of the New FSL Notes or not entered into them at all.

41.    Many of the Plaintiffs acquired shares in FSL during the time period Garzella, Henricksen, Advanced CFO, and Wootton were violating the covenants of the WBI Secured Note:

a. Plaintiff Chris Lockhart; total of 84,620 shares for $95,080; December 19, 2016, February 1, 2017, and June 21, 2017;

  b. Plaintiff James Brunke; 47,619 shares for $33,000; December 31, 2016;

  c. Bill Barkalow; 35,910 shares for $50,000; June 28, 2017;

  d. Plaintiff Julian Castelli; 35,910 shares for $50,000; July 13, 2017,

  e. Plaintiff Evan Barrett; total of 32,000 shares for $44,554.88; July 24, 2017
   and October 10, 2017;

  f. Plaintiff Gary Kopacka, total of 18,667 shares for $25,954; August 4, 2017;

  g. Cybeck Capital Fund VI, LLC; 179,554 shares for $250,000; July 31, 2017;

  h. Plaintiff Donald Slivensky; 1,784,232 shares for $2,000,000.00; December 15,
   2016, converted February 22, 2017, and March 24, 2017; and

  i. Plaintiff Thomas W. Thompson; 179,554 shares for $250,000; August 10,
   2017.

42. Disclosure of the covenants in the WBI Secured Note to the shareholders would have revealed the true financial state of FSL. Failure to disclose such information was material. The shareholders would have renegotiated the terms of the share purchase or not entered into the transactions at all.

**Self-Dealing and Misinformation is Rampant**

43. Garzella's decisions in repaying his personal loans to FSL were out of personal motivations (such as wanting to purchase a car for his son in August 2017), not based on FSL's ability to repay or a strategic purpose for FSL.

44. Garzella rarely provided the Board of Directors with meeting minutes as required under state law. The meeting minutes that were provided did not accurately reflect the content of the meetings and indicated actions were approved when they had never been voted on. Garzella, Henricksen, Wootton, and Advanced CFO failed to disclose information about the company's

problems, including but not limited to the terms of the WBI Secured Note, that would have alerted the Board to the company's true financial condition.  When the Board asked for further information, Garzella, Henricksen, Wootton, and Advanced CFO purposely withheld information that would have revealed the true financial condition of the company at an earlier date.

45.     Even when FSL was under financial distress, Garzella continued to utilize first class air travel and have excessive expense account reimbursements.

46.     Garzella provided unrealistic sales projections to the Board, many of whom were also investors.  For example, Garzella repeatedly told the Board that Eastern Aviation/Shell would purchase over $100,000 of software upgrades.  Later, in 2018, Chris Lockhart talked with the CEO of Eastern Aviation/Shell, Robbie Stallings, who informed him that Eastern Aviation/Shell had no intention of spending anywhere near that type of money on software and that he had told Garzella that.

47.     Investors and shareholders were told prior to their infusion of money to FSL that its customers were under contracts. This statement was later to be determined to be false, as most customers were under unenforceable agreements and had not agreed to any form of a software license, leaving the primary intellectual property of FSL vulnerable.

48.     Investors and shareholders were told before their infusion of money to FSL that the primary product of FSL – software – was complete and that customers were satisfied with the product and the customer service. In 2018, these statements were learned to be false.

49.     Upon information and belief, Garzella paid himself in 2018-2019 from the Pan Am contract that was run through his JMG Engineering business.  The contract was set up to pay outside contractors to do the work on Version 8 of the FSL software and to provide FSL with

some monthly revenue.  Both Garzella and Wootton asked the Board to approve a Motion allowing Garzella to pay himself from the Pan Am revenues, even though he was being paid as an employee of FSL.  The Board refused to approve the Motion.

### The Truth is Revealed

50.　　In early 2018, Plaintiff Chris Lockhart, then a director of FSL, was given the authority to sell the assets of FSL.  At that time, he began to double check the financial information that Garzella had been providing to the Board of Directors. He also contacted WBI and asked for a copy of the WBI Secured Note.  He contacted other creditors and found there was significant debt not listed on the balance sheet.  Lockhart did not discover the other falsehoods, self-dealings, and manipulations described above in this complaint until early 2018.

51.　　Unfortunately, FSL's financial and operational condition was in such poor shape by the first quarter of 2018, FSL soon declined.  FSL was liquidated in bankruptcy with the Plaintiffs receiving no payment for their investments and shares.

### Garzella's Improprieties Are Facilitated by Advanced CFO

52.　　Advanced CFO was retained by FSL to act as a professional CFO.

53.　　Advanced CFO's proposal to FSL says that it is the "premiere outsourced CFO services company in Utah" and that they have "proven CFOs, controllers, and bookkeepers" "providing services at a fraction of the cost and risk of employing a full-time resource."

54.　　The "project details" in the FSL contract with Advanced CFO, stated that Advanced CFO would:

　　　　a.　"serve as Treasurer for the company as well as CFO"

　　　　b.　"be responsible for investing and spending of funds"

　　　　c.　"review and clean up historical financials to comply with GAAP"

    d. "oversee the accounting function"

55.    From 2015 through March 2019, JB Henriksen served in the role on behalf of Advanced CFO.

56.    From February 2017 through November 2017, Henriksen blessed financial statements, pro formas used to gain investment, and other documents sent to WBI and the Board of Directors without having accessed to the accounting system to verify the accuracy of the contents of the documents. FSL had to engage another CPA to get the post Vessix merger financials in order.

57.    If Henrisken had performed his job to the standard expected based on the hiring of the Advanced CFO, Garzella's self-dealing regarding loan repayment, violation of the WBI Secured Note covenants, and other misuse of funds would have been discovered significantly earlier than the first quarter of 2018.

58.    Henriksen's actions are imputed as the responsibility of Advanced CFO.

59.    Whether by neglect or active participation, Henriksen facilitated the harm Garzella inflicted upon the Plaintiffs.

## **COUNT I**

### **(FOR VIOLATIONS OF SECTION 10(b) OF THE EXCHANGE ACT AND RULE 10b-5 PROMULATED THEREUNDER AND SECTION 20(a) OF THE EXCHANGE ACT)**

60.    The prior paragraphs of this Complaint are incorporated herein by reference as though set forth in full.

61.    The Defendants, jointly and severally, carried out a plan, scheme, and course of conduct which was intended to and did deceive Plaintiffs into investing in and loaning significant funds to FSL. The purpose of the scheme was to enrich Defendants through the use of materially

false statements and omissions intended to secure investment from Plaintiff.

62.     The Defendants, individually and in concert, directly and indirectly, by the use, means, or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information.

63.     The Defendants each employed devices, schemes, and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of FSL's value, performance, and continued substantial sales and financial growth, which included among other things, the making of, or the participation in the making of, untrue statements of material facts about the nature of FSL's products, the use of Plaintiffs' investment money, and the condition of FSL's business, and omitting to state material facts necessary to make the statements made about FSL's products, the use of Plaintiff's investment money, and the condition of FSL's business not misleading in light of the circumstances under which they were made, as set forth more particularly herein. They engaged in transactions, practices, and a course of business which operated as a fraud and deceit upon the Plaintiffs.

64.     The Defendants' primary liability arises from the following facts, among others: (a) the Defendants made the misrepresentations themselves or omitted to state material facts to make these statements not misleading; (b) the Defendants were high-level executives at FSL; (c) the Defendants, by virtue of their responsibilities and activities as senior executive officers, were privy to, and participated in, the creation, development, and reporting of FSL's, marketing, projections, reports, and compliance with FSL's covenants and the Board of Directors' instructions; (d) the Defendants enjoyed significant personal contact and familiarity with, were advised of, and had access to other members of FSL's management team, internal reports, and

16

other data and information about the products, the use of Plaintiffs' investment money, and the condition of FSL's business; and (e) the Defendants caused the dissemination of information to the Plaintiffs which they knew or recklessly disregarded was materially false and misleading.

65.     The Defendants, and each of them, had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with severely reckless disregard for the truth, in that each failed to ascertain and disclose such facts, even though such facts were available to each of them.  The Defendants' material misrepresentations and/or omissions were made knowingly or with deliberate recklessness and for the purpose and effect of concealing adverse information from Plaintiff.  As demonstrated by the Defendants' misstatements and omissions, the Defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

66.     The Defendants acted with scienter in that they knew or recklessly disregarded that the documents and statements issued or disseminated in the name of FSL were materially false and misleading, and knowingly or recklessly substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violators of the federal securities laws.

67.     The Defendants, by virtue of their receipt of information reflecting the true facts regarding FSL, its operations, and its business practices, their control over and/or receipt of FSL's materially misleading misstatements and/or their associations with FSL that made them privy to confidential proprietary information concerning, among other things, FSL's compliance with its covenants with other lenders and its appropriate methods for addressing self-dealing,

were active and culpable participants in the fraudulent scheme alleged herein. The Defendants knew and/or recklessly disregarded the falsity and misleading nature of the information, which they caused to be disseminated to the investing public. The ongoing fraud as described herein could not have been perpetrated without the knowledge and/or recklessness and complicity of the Defendants.

68.     These facts, in conjunction with the additional indicia of scienter detailed above, collectively support a strong inference of each Defendants' scienter.

69.     At the time of said misrepresentations and omissions, Plaintiffs were ignorant of their falsity and believed them to be true. Had Plaintiffs known of the true nature and prospects of FSL's products, the financial viability of FSL, the use of Plaintiffs' investment money, which were not disclosed by the Defendants, then Plaintiff would not have purchased or otherwise invested in FSL.

70.     By virtue of the foregoing, the Defendants have each violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

71.     As a direct and proximate result of the Defendants' wrongful conduct, Plaintiffs suffered damages in connection with its investments in FSL.

72.     The prior paragraphs of this Complaint are incorporated herein by reference as though set forth in full.

73.     The Defendants acted as controlling persons of FSL within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions with FSL, participating in, and/or awareness of, FSL's operations, and/or intimate knowledge of FSL's fraudulent practices and FSL's actual results and future prospects, the Defendants had the power to influence and control, and did influence and control, directly or indirectly, the decision

making of FSL, including the content and dissemination of the various statements which Plaintiffs contend are false and misleading.  The Defendants were provided with, or had unlimited access to, copies of FSL's reports, and other statements alleged by Plaintiffs to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

74.     In addition, the Defendants had direct involvement in the day-to-day operations of FSL and, therefore, are presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein and exercised the same.

75.     As set forth above, the Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.  By virtue of their controlling positions, the Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of the Defendants' wrongful conduct, Plaintiffs suffered damages in connection with its investment and loan to FSL.

## COUNT II

## (COMMON LAW FRAUD)

76.     The prior paragraphs of this Complaint are incorporated herein by reference as though set forth in full.

77.     At all relevant times and places, Defendants, collectively and individually, represented, warranted, advertised, and otherwise claimed both orally and in writing on several occasions, which was determined to be false, misrepresented, inaccurate, omitted, and otherwise never disclosed to Plaintiffs, including but not limited to the following:

> a.  The nature of the WBI Secured Note covenants and FSL's complete lack of compliance with said covenants;

b. The nature of the completeness and efficacy of FSL's software products;

c. The nature and existence of customer contracts and protection of FSL's intellectual property rights;

d. The compliance with and auditing of the accounting processes for any form of improper self-dealing;

e. The legitimacy, scope, size, and accuracy of marketing projections;

f. FSL's financials including but not limited revenue, cashflow and percentage margins, and conditions of its operations while understating, misrepresenting, and otherwise omitting its accruing debts, obligations, and operating expenses and costs;

g. Garzella's representations, both contractually and orally regarding the intended use of Plaintiffs' investment and loans;

h. The scope, severity, and significance of debts accruing to FSL, including but not limited to debts, obligations, and other payments owed or due to WBI; and

i. Projected sales were inflated.

78. The representations were made by Defendants to Plaintiffs for the purpose of making profits from such false, misleading, and untrue representations and omissions. The representations and omissions were material and form the basis as to Plaintiffs investing in FSL by purchasing shares or lending money.

79. Defendants knew that the representations and/or omissions were false when made. Defendants intended that Plaintiffs act on the representations in the manner reasonably contemplated by Defendants.

80. Plaintiffs at the time did not know and could not have known the representations

were false.

81.     Plaintiff reasonably relied on the representations and/or the omissions as truthfully presenting all material facts.  Plaintiff reasonably relied to its detriment on Defendants' representations, material omissions, warranties, advertisements and claims.

82.     Defendants made the fraudulent representations egregiously, willfully, purposefully, maliciously and with wanton disregard for Plaintiff's rights.  Defendants' concealment was motivated by its actual malice and wanton and purposeful disregard of Plaintiff's rights.

83.     As a direct and proximate result of Defendants' fraud, Plaintiff has suffered the loss of its investment money, and continues to sustain harm, including but not limited to economic harm, damage to reputation, lost earnings and profits, investigation expenses, attorney's fees, and litigation expenses.  Plaintiff is entitled to compensatory and punitive damages, attorney fees and costs, and interest.

## COUNT III
### (BREACH OF FIDUCIARY DUTY)

84.     The preceding paragraphs are incorporated herein by reference as though set forth in full.

85.     The Defendants, as officers, shareholders, fiduciaries, and otherwise, owed to Plaintiffs, several of whom were Board Members, fiduciary duties of loyalty, care, honesty, and avoiding self-dealing.  The Defendants breached their individual and collective duties by engaging in conduct, including but not limited to the following:

    a.  Failing to disclose the nature of the WBI Secured Note covenants and failing to effectuate compliance with said covenants;

    b.  Making misrepresentations regarding the nature of the completeness and

efficacy of FSL's software products;

    c.   Making misrepresentations regarding the nature and existence of customer contracts and protection of FSL's intellectual property rights;

    d.   Failing to comply with and audit the accounting processes for any form of improper self-dealing;

    e.   Making misrepresentations as to the legitimacy, scope, size, and accuracy of marketing projections;

    f.   Improperly stating FSL's financials including but not limited revenue, cashflow and percentage margins, and conditions of its operations while understating, misrepresenting, and otherwise omitting its accruing debts, obligations, and operating expenses and costs;

    g.   Making misrepresentations, both contractually and orally regarding the intended use of Plaintiffs' investment and loans;

    h.   Failing to appropriately identify the scope, severity, and significance of debts accruing to FSL, including but not limited to debts, obligations, and other payments owed or due to WBI; and

    i.   Projected sales were inflated.

86.    As a result of these breaches, Plaintiffs have suffered the loss of its investment money, and continues to sustain harm, including but not limited to economic harm, damage to reputation, lost earnings and profits, investigation expenses, attorney's fees, and litigation expenses. Plaintiffs are entitled to compensatory and punitive damages, attorney fees and costs, and interest.

## COUNT IV

### (UNJUST ENRICHMENT)

87.     The prior paragraphs of this Complaint are incorporated herein by reference as though set forth in full.

88.     Defendants came into control of the investment and loan money of Plaintiffs and have been unjustly enriched thereby to Plaintiffs' detriment.

89.     Defendants enjoyed the use, benefits, and privileges of possession of the aforesaid sums and used it in their fraudulent business activities and self-dealing, deriving substantial revenues and benefits from Plaintiffs' investments and loans to FSL.

90.     As a direct and proximate result of Defendants' misrepresentations, omissions, and breaches of contract and fiduciary duties, Plaintiff has sustained harm, including but not limited to the loss of its investment and loan money.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as set forth below:

A. Actual damages that will make Plaintiffs whole, including but not limited to reimbursement of the amounts invested by Plaintiff and recovery for economic harm, interest, and investigation expenses in amounts to be proven at trial;

B. Punitive damages in an amount that will dissuade Defendants from so acting in the future;

C. Attorneys' fees, expenses and costs of suit;

D. Pre-judgment and post-judgment interest on such monetary relief;

E. All other relief that the Court deems equitable and just at law or equity.

Respectfully submitted,

GOTTSCHLICH & PORTUNE, LLP

*/s/ Martin A. Foos*
Martin A. Foos  (0065762)
Terry W. Posey, Jr.  (0078292)
201 East Sixth Street
Dayton, Ohio 45402
(937) 913-0200
(937) 824-2818 (Fax)
mfoos@gplawdayton.com
tposey@gplawdayton.com
**Attorneys for Plaintiff**

## JURY DEMAND

Plaintiff hereby demands a trial by jury as to all issues.

*/s/ Martin A. Foos*
Martin A. Foos