IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

M. CHRISTOPHER LOCKHART,
et al.,                              :

          Plaintiffs,                        Case No. 3:19-cv-00405
                                     :
     v.                                      JUDGE WALTER H. RICE

JACK GARZELLA, et al.,
                                     :
          Defendants.

---

DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING
IN PART DEFENDANTS JOHN BRENT HENRIKSEN AND CFO
SOLUTIONS, L.C. D/B/A ADVANCED CFO SOLUTIONS, LLCS'
MOTION TO DISMISS (DOC. #21), DEFENDANT JACK GARZELLA'S
NOTICE OF JOINDER (DOC. #27) AND DEFENDANT JOHN
WOOTTON'S NOTICE OF JOINDER (DOC. #28); DISMISSAL OF
COUNT ONE PURSUANT TO RULE 12(b)(6) IS WITHOUT
PREJUDICE TO PLAINTIFFS FILING WITHIN 14 DAYS OF THIS
DECISION AND ENTRY AN AMENDED COMPLAINT SUBJECT TO
THE STRICTURES OF FED. R. CIV. P. 11

---

     Before the Court is a Motion to Dismiss Plaintiffs' Complaint pursuant to

Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6) ("Motion" or "Motion to

Dismiss"), filed by Defendants John Brent Henriksen[1] ("Henriksen") and CFO

Solutions, L.C. d/b/a Advanced CFO Solutions, LLC ("Advanced CFO"), Doc. #21.

Also before the Court is a "Notice of Joinder," Doc. #27, filed by *pro se* Defendant

Jack Garzella ("Garzella"), and a "Notice of Joinder," Doc. #28, filed by *pro se*

---

[1] Defendant John Brent Henriksen asserts that he is incorrectly identified in the Complaint
as "JB Henricksen." Doc. #21, PageID#103.

Defendant John Wootton ("Wootton"). Both *pro se* Defendants incorporate the arguments and authorities cited in the Motion to Dismiss and request dismissal of Plaintiffs' claims against them pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). Henriksen, Advanced CFO, Garzella and Wootton are collectively referred to as "Defendants."

Plaintiffs, Christopher Lockhart ("Lockhart"), Evan C. Barrett, Greg Bell, Jim Brunke, Julian Castelli, Cybeck Capital VI, LLC, Gary M. Kopacka, Bill Mestdagh, Thomas J. Meyer, Diane R. Meyer, James R. Sever, Donald Slivensky, Donald Slivensky Living Trust, Donald Slivensky as Trustee, Daniel Epperson and Thomas W. Thompson (collectively, "Plaintiffs"), have filed responses opposing the Motion to Dismiss, Doc. #24, and Henriksen and Advanced CFO have filed a reply. Doc. #25. Plaintiffs have filed responses opposing each of the Notices of Joinder filed by Garzella and Wootton, Doc. ##29 and 30.

The matter is ripe for resolution.

## I. Background Facts

Flying Software Labs, Inc. ("FSL"), located in Utah, developed and marketed software products designed to assist aviation related activities. Doc. #1, PageID#5.[2] Each of the 15 Plaintiffs is alleged to be an "investor in FSL via

---

[2] The following facts are taken from the Complaint (Doc. #1). In setting forth the factual background, the Court has accepted Plaintiffs' allegations as true and has construed them in the light most favorable to them.

promissory notes" or as a shareholder in the company.[3] *Id.*, PageID##6 and 7. In addition to being FSL shareholders and/or investors in promissory notes, some of the Plaintiffs are also members of the board of directors or board of advisors. *Id.* The Complaint alleges that all the investments made by Plaintiffs occurred between October 2016 and October 2017. *Id.*, PageID##10-12.

The Complaint names four Defendants: (1) Defendant Garzella, the CEO and chairman of the board of FSL; (2) Advanced CFO, a Utah limited liability corporation that provided FSL with chief financial officer services on a contract basis; (3) Henriksen, FSL's Chief Financial Officer and an owner and partner of Advanced CFO[4]; and (4) Wootton, FSL's attorney and corporate secretary. *Id.*, PageID#7. Plaintiffs allege that FSL was under the "complete domination and management" of Garzella and that Advanced CFO, Henriksen and Wootton "aided" him. *Id.*, PageID#5. The Complaint also alleges that Garzella "undertook financing and stock activities that were supported by a series of misstatements" and lies that were "contrary to direction from the Board of Directors governing FSL." *Id.* As the CEO and chairman of the FSL board, Garzella "engaged in a series of self-dealing, contractual breaches, and other malfeasance." *Id.* These actions "eventually resulted in FSL's bankruptcy."[5] *Id.*

---

[3] The Complaint also alleges that some of the Plaintiffs are "creditors." It is unclear if this is a different category than "investors in promissory notes." *Id.*, PageID#5.

[4] Henriksen is alleged to be an agent of Advanced CFO. *Id.*, PageID#8.

[5] Although the Complaint alleges that FSL filed bankruptcy, it does not allege a date of the filing. The Motion to Dismiss, however, attaches as an exhibit FSL's Chapter 11 voluntary

Plaintiffs allege that in November 2016, approximately one month after some of the Plaintiffs made their first investment in FSL, Defendants negotiated a $400,000 five year secured note ("WBI Note" or "Note") that contained "specific terms." *Id.*, PageID#7. Although FSL's board and Plaintiffs were aware of the Note and its amount, the terms of the Note were material to the operation of FSL and were not disclosed to Plaintiffs. *Id.*, PageID#11. The covenants[6] in the WBI Note prohibited FSL from engaging in the following activities: (1) entering into a new secured loan or permitting "any lien or encumbrance on any of its assets;" (2) paying any principal or interest on another promissory note made between it and any its "officers, directors, members, or managers before the WBI Note had been repaid;" (3) paying "any principal or interest on any other debt obligation to anyone who was not an officer, director, member, or manager without first obtaining prior written consent from WBI;" and (4) making "any capital expenditure in an amount greater than $25,000 without WBI's prior written consent." *Id.*, PageID#8.

Plaintiffs allege that "FSL under the control of Defendants Garzella, [Henriksen], Wootton, and Advanced CFO (acting through its agent [Henriksen]), carried on its future business without regard to these covenants." *Id.*, PageID#8. "It violated all of them and did not disclose these material terms to the Board or to

_____

petition dated November 27, 2018, and an order converting the bankruptcy to a Chapter 7 on April 5, 2019. Doc. #21-3.

[6] The "specific terms" in the WBI Note are later referred to as "covenants." Doc. #1, PageID#8.

4

future investors, including Plaintiffs." *Id.* Plaintiffs allege that Garzella, without prior written consent from WBI, repaid himself for loans he had made to FSL, repaid a loan to another individual, invested "hundreds of thousands of dollars" in software and negotiated an acquisition in a company that resulted in FSL assuming over $1.3 million of liens. *Id.*, PageID##8-9. Defendants also "purposely withheld information" from the FSL Board that "would have revealed the true financial condition of the company at an earlier date." *Id.*, PageID#13.

Many of the Plaintiffs acquired shares in FSL or became investors in promissory notes at a time when Defendants were violating the covenants of the WBI Note. Plaintiffs allege that the disclosure to them of these covenants and FSL's violation of them would have revealed FSL's "true financial state." *Id.*, PageID##11-12. Having this information about FSL's financial condition would have caused Plaintiffs either to renegotiate the terms of their promissory notes and share purchases or not enter into the transactions with FSL. *Id.*

In addition to violating certain covenants in the WBI Note, Garzella provided unrealistic sales projections to the Board of Directors, many of whom were investors, falsely stated that FSL's software, its main product, was complete and spent FSL funds on first class air travel at a time when the company was under financial distress.

The "falsehoods, self-dealings, and manipulations" were not discovered by Plaintiff Lockhart, a member of the Board of Directors, as well as a shareholder and promissory note investor, until early 2018. *Id.*, PageID#14. By the time of

5

Plaintiff Lockhart's discovery, FSL's financial and operational condition were "in such poor shape" that FSL "was liquidated in bankruptcy" and Plaintiffs received "no payment for their investments and shares." *Id.*, PageID#14.

Plaintiffs allege that Henriksen acted as the CFO from 2015 through March 2019, and that from February 2017 through November 2017, he "facilitated the harm Garzella inflicted upon the Plaintiffs." *Id.*, PageID#15. The Complaint alleges that Henriksen "blessed financial statements, *pro formas* used to gain investment, and other documents sent to WBI and the Board of Directors" yet failed to access the FSL accounting system to verify the accuracy of the documents. *Id.* The Complaint alleges that had he performed his job as CFO "to the standard expected," Garzella's "self-dealing, regarding loan payment, violation of the WBI Note covenants, and other misuse of funds" would have been discovered "significantly earlier than the first quarter of 2018." *Id.*, PageID#15.

The Complaint alleges that Wootton, along with the other Defendants, allegedly worked to negotiate the Note, carry on FSL's business without regard to the covenants, failed to disclose and "purposefully withheld" information about FSL's financial condition. *Id.*, PageID##7-8 and 14. Along with Garzella, Plaintiffs allege that Wootton asked "the Board to approve a [m]otion allowing Garzella to pay himself from" a contract that was being run through Garzella's separate

engineering company "even though he was being paid as an employee of FSL." *Id.*, PageID#13.[7]

The Complaint alleges four counts against Defendants. Count I alleges federal securities violations under §§ 10(b)[8] and 20(a) of the Securities Exchange Act of 1934 ("the Exchange Act"), 15 U.S.C. §§78(b) and 78t(a) and Rule 10b-5 promulgated thereunder by the U.S. Securities and Exchange Commission ("SEC"), 17 C.F.R. §240.106-5 and §§12(a)(2). Doc. # 1, PageID#15. Counts II, III and IV allege state law claims of common law fraud, breach of fiduciary duty and unjust enrichment, respectively. *Id.*, PageID##19, 21 and 23.

The Complaint states that subject matter jurisdiction exists pursuant to 28 U.S.C. §§1331, 1337 and 1332. Plaintiffs' assertion of "complete diversity of citizenship," however, is not supported by the allegations in the Complaint.[9] Therefore, the Court exercises jurisdiction, if at all, pursuant to §§ 1331, federal question jurisdiction and/or 1337, commerce and antitrust regulations.

---

[7] The Complaint alleges that the FSL board did not approve this motion.

[8] The Court will use § 10(b) to refer to both the statutory provision and Rule 10b-5. *S.E.C. v. Zandford*, 535 U.S. 813 (2002), n.1 (scope of Rule 10b-5 is coextensive with the coverage of § 10(b) (citations omitted)).

[9] The Complaint alleges that Plaintiff, Julian Castelli, and all the Defendants are citizens of Utah. *Id.*, PageID#4. Accordingly, the Court lacks subject matter jurisdiction under § 1332.

## II. Legal Analysis

### A. Introduction

Defendants argue that the Complaint should be dismissed pursuant to Fed. R. Civ. P 12(b)(1). They assert that despite Plaintiffs' "artful pleading," under Delaware law the claims are, "in substance," merely "classic derivative claims" that belong to FSL.[10] Doc. #21-1, PageID##114, 110 and 111. *Minger v. Green*, 239 F.3d 793, 799 (6th Cir.2001) ("The Rules require that we not rely solely on labels in a complaint, but that we probe deeper and examine the substance.") (citation omitted)). Defendants contend that because FSL is in bankruptcy, only FSL's Chapter 7 bankruptcy trustee has standing to assert these claims pursuant to 11 U.S.C. 541(a)[11] and dismissal of this case is required for lack of subject matter jurisdiction. Doc. #21-1, PageID##110 and 105. In support of this branch of their Motion to Dismiss, Henriksen and Advanced CFO attach two exhibits, FSL's articles of incorporation from the state of Delaware, and the docket sheet of FSL's

---

[10] A derivative claim is an injury to a corporation that cannot ordinarily be brought by shareholders who suffer the injuries only indirectly. "Stated another way, a shareholder brings a derivative action on behalf of the corporation for injuries sustained by or wrongs done to the corporation, and a shareholder brings a direct action where the shareholder is injured in a way that is separate and distinct from the injury to the corporation. *Nicole Gas Production, Ltd*, 916 F.3d 566, 576 (6th Cir 2019) (civil contempt and award of attorney fees and expenses to Chapter 7 trustee of $91,068 affirmed when sole shareholder of debtor corporation and attorneys violated automatic stay by bringing derivative claim in state court) (citations omitted)).

[11] Filing a bankruptcy petition creates a bankruptcy estate which includes "all legal or equitable interests of the debtor in property as of the commencement of the case," 11 U.S.C. § 541(a)(1). *In re Parker*, (6th Cir. 2007). "As 'legal and equitable interests,' causes of action that belong to the debtor constitute property of the estate under § 541(a)(1)." *In re Cannon*, 277 F.3d 838, 853 (6th Cir.2002).

bankruptcy proceedings in the Bankruptcy Court for the State of Utah. Doc. ##21-1 and 21-2.

Alternatively, Defendants argue that the Complaint should be dismissed for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6). They contend that Plaintiffs' § 10(b) federal securities claim in Count I does not satisfy the heightened pleading standards under Fed. R. Civ. P. 9(b) and the Private Securities Litigation Reform Act, 15 U.S.C. § 78v-4, et seq. Because no claim is stated under § 10(b), Defendants assert that Plaintiffs' federal securities claim under § 20(a) fails as a matter of law. Defendants Henriksen and Advanced CFO further contend that § 20(a) also fails because Plaintiffs do not plead facts showing that Henriksen and Advanced CFO had the necessary power and influence to control FSL's corporate policy that resulted in the alleged securities fraud.[12] As for Plaintiffs' claims for common law fraud in Count II, Defendants assert that this claim fails to state a claim upon which relief can be granted under the pleading requirements of Rule 9(b), and, because Plaintiffs breach of fiduciary duty claim alleged in Count III is predicated on fraud, it too fails under Rule 9(b). With respect to Count IV, unjust enrichment, Defendants contend, among other things, that Plaintiffs fail to allege in their Complaint the necessary legal elements for this claim.

---

[12] Defendants Garzella and Wootton assert that the arguments of Henriksen and Advanced CFO apply to them, "incorporate their arguments and authorities" and briefly address many of Henriksen and Advanced CFO's arguments. They do not, however, address § 20(a).

In response, Plaintiffs argue that they have standing and that this Court has subject matter jurisdiction since they allege direct claims against Defendants. They assert that under Delaware law their harm is separate from that done to FSL "and for which FSL could not recover." Doc. #24, PageID#171. They contend that the Complaint describes with particularity the acts and omissions of Defendants that resulted in Plaintiffs investing in FSL promissory notes and becoming shareholders, and that they have pled sufficient facts to satisfy their §§10(b) and 20(a) federal claims alleged in Count I. They further maintain their state claims satisfy the pleading requirements for fraud, breach of fiduciary duty and unjust enrichment. *Id.*

Because the Court's jurisdiction is predicated upon §§ 1332 and 1337, the Court will first analyze Defendants' Motion pursuant to Fed. R. Civ. P.12(b)(1) to determine whether Plaintiffs have standing to assert the federal securities violations alleged in Count I. The Court will then consider Defendants' Motion pursuant to Fed. R. Civ. P. 12(b)(6), as it pertains to the federal securities fraud claim. *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990) (A court is "bound to consider the 12(b)(1) motion first since the Rule 12(b)(6) challenge becomes moot if this court lacks subject matter jurisdiction."). Because standing must be established for each claim, following the Court's analysis of the federal securities claims alleged in Count I, the Court will address Defendants' Motion with respect to the state law claims in Counts II, III and IV.

## B. Standard of Review for a Motion to Dismiss Pursuant to Fed. R. Civ. P.12(b)(1)

"Standing is a jurisdictional requirement," and "[i]f no plaintiff has standing, then the court lacks subject-matter jurisdiction" and the complaint must be dismissed. *Tennessee General Assembly v. United States Dep't of State*, 931 F.3d 499, 507 (6th Cir. 2019); *Lyshe v. Levy,* 854 F.3d 855, 857 (6th Cir. 2017) (citation omitted). This doctrine "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547, 194 L. Ed. 2d 635 (2016), as revised (May 24, 2016). Standing "assures that there is a real need to exercise the power of judicial review in order to protect the interests of the complaining party." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493, 129 S.Ct. 1142, 173 L.Ed.2d 1 (2009).

To establish standing, a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *Spokeo*, 136 S.Ct. at 1547. A plaintiff establishes injury in fact when he shows that he suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Id.*, at 1548 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130 (1992) (internal quotation marks omitted)). The plaintiff carries the burden of establishing those three elements and, at the pleading stage, the plaintiff must clearly allege facts demonstrating each element. *Id.* Moreover, standing must be established for each claim alleged.

*Hagy v. Demers & Adams,* 882 F.3d 616, 620 (6th Cir. 2018) (quoting

*DaimlerChrysler Corp v. Cuno,* 547 U.S. 332, 352 (2006)). If the plaintiff fails to

show standing, "it is within the trial court's power to allow or to require the

plaintiff to supply, by amendment to the complaint or by affidavits, further

particularized allegations of fact deemed supportive of plaintiff's standing." *Warth*

*v. Seldin*, 422 U.S. 490, 501, 95 S.Ct.2197 (1975). If after this amendment or

supplemental filing, standing "does not adequately appear from all materials of

record, the complaint must be dismissed." *Id.*

     A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) may either

"challenge the sufficiency of the pleading itself (facial attack) or the factual

existence of subject matter jurisdiction (factual attack)." *Cartwright v. Garner*, 751

F.3d 752, 759 (6th Cir. 2014) (citing *United States v. Ritchie*, 15 F.3d 592, 598 (6th

Cir. 1994)). "A facial attack goes to the question of whether the plaintiff has

alleged a basis for subject matter jurisdiction, and the court takes the allegations

of the complaint as true for purposes of Rule 12(b)(1) analysis," but "[a] factual

attack challenges the factual existence of subject matter jurisdiction." *Id.* Making

this "crucial distinction, often overlooked," is essential to determining the proper

standard of review to apply. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78

F.3d 1125, 1134 (6th Cir. 1996) (quoting *Mortensen v. First Federal Savings and*

*Loan Ass'n*, 549 F.2d 884, 890 (3d Cir. 1977)).

     In this case, Defendants make a facial attack and, although Plaintiffs still

bear the burden of establishing subject matter jurisdiction, "both the trial and

reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Bino v American Bar Association*, 826 F.3d 338 (6th Cir. 2016) (citing *Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197 1975)).[13]

### C. Because Plaintiffs Have Standing to Assert their §§ 10(b) and 20(a) Claims under the Exchange Act, Advanced CFO and Henriksen's Motion to Dismiss Count I, Pursuant to Rule 12(b)(1), Doc. #21, and Garzella's Notice of Joinder, Doc. #27 and Wootton's Notice of Joinder, Doc. #28, adopting Advanced CFO and Henriksen's Motion to Dismiss Count I Pursuant to Rule 12(b)(1), are Overruled.

In analyzing whether Plaintiffs have Article III standing in Count I, the Court applies Delaware law, the state of FSL's incorporation, and first examines whether the claims asserted in Count I are derivative or direct. *Kepley v. Lanz*, 715 F.3d 969, 972-973 (6th Cir.)(2013) (to determine standing in a suit between former and current shareholders over an investor agreement, the law of the state of

---

[13] Defendants attach two exhibits to their motion and request that the Court take judicial notice that FSL is organized under Delaware law and of the "active Chapter 7 bankruptcy proceedings of FSL, captioned *In re Flying Software Labs, Inc.*, Case No. 2:2018-bk-28848 (Bankruptcy Court of Utah)." Doc. #21-1, PageID#109. The facts in these two exhibits do not raise "a factual controversy" requiring this Court to "weigh the conflicting evidence to arrive at the factual predicate that subject-matter does or does not exist." *Gentek Bldg. Prod., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). Defendants' exhibits of FSL's articles of incorporation and the petition and order converting FSL's bankruptcy to Chapter 7, Doc. #21-2, PageID#127 and Doc. #21-3, PageID#132, are part of the pleadings since they are referred to in the Complaint and/or are public record. *See Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999), abrogated on other grounds by *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002) (holding that documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the plaintiff's claim including public records, matters of which a court may take judicial notice, and letter decisions of governmental agencies).

incorporation applies to answer the "dispositive question" of whether the claim was direct or derivative) (citing *Casden v. Burns*, 306 Fed.Appx. 966, 974 (6th Cir.2009)).[14]

Defendants contend that Plaintiffs' claims are derivative and belong to FSL, based on allegations in the Complaint that FSL's "financial losses" resulted in its filing for bankruptcy. As alleged by Plaintiffs, these losses occurred as a result of misstatements, lies. . .self-dealing, contractual breaches, and other malfeasance" that were "contrary to the Board of Directors." Doc. #25, PageID##193-198. Defendants argue that Delaware law, and in particular the two-part test announced by the Delaware Supreme Court in *Tooley v. Donaldson, Lufkin, & Jenrette, Inc.*, 845 A.2d 1031,1035 (Del. 2004), requires that the Court find that all the claims alleged in the Complaint are derivative.

In *Tooley*, the Delaware Supreme Court considered whether a shareholders' claim against the board of directors for breach of a fiduciary duty due to a delay in a proposed merger was a derivative claim or a direct claim. The state supreme court held that whether a claim is direct or derivative is determined by answering two questions: "[1] Who suffered the alleged harm-the corporation or the suing

---

[14] Ohio follows the internal affairs doctrine, *Bryan v. DiBella*, Franklin App. No. 08AP–418, 2009-Ohio-1101, 2009 WL 638472, *3. This doctrine is "a conflict of laws principle which recognizes that only one State should have the authority to regulate a corporation's internal affairs—matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders—because otherwise a corporation could be faced with conflicting demands." *Edgar v MITE Corp.*, 457 U.S. 624, 102 S.Ct. 2629 (1982) (citations omitted) (tender offers contemplate transfers of stock by shareholders to third parties and do not implicate the internal affairs of the corporation).

stockholder individually-and [2] who would receive the benefit of the recovery or

other remedy?" *Id.* at 1035. In answering the first question, *Tooley* requires that

the complaint be reviewed to determine "the nature of the wrong alleged and the

relief requested." *Id.* at 1036. Additionally, to be a direct claim, it must be

established that the plaintiff "can prevail without showing an injury to the

corporation." *Id.* at 1039. Defendants argue that because Plaintiffs cannot recover

without showing an injury to FSL, their claims are derivative.

 *Tooley* "and its progeny," however, involved "the narrow issue of whether

a claim for breach of fiduciary duty or otherwise to enforce the corporation's own

rights must be asserted derivatively or directly." *Citigroup v AHW Investment*

*Partnership*, 140 A.3d 1125, 1127 (Del. 2016). In *Citigroup*, the Delaware Supreme

Court found *Tooley* "not relevant to the analysis of whether the holder claims[15] at

issue here are direct or derivative." *Id.*, at 1126.[16]

> Before evaluating a claim under *Tooley*, 'a more important initial
> question has to be answered: does the plaintiff seek to bring a claim
> belonging to her personally or one belonging to the corporation
> itself?' (citing *NAF Holdings, LLC v Li & Fung (Trading) Limited*, 118
> A. A3d 175 (Del. 2015). Because the holder claims at issue here
> belong to the holding stockholders under the state laws that govern
> the claims, and are not fiduciary duty claims or claims otherwise

---

[15] A plaintiff asserting a "holder claim" alleges that the defendant wrongfully induced him to continue holding his stock. Federal securities law, however does not recognize holder claims. *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 734–735, 95 S.Ct. 1917 (1975).

[16] Although not utilized by the Delaware Supreme Court in *Citigroup*, *Tooley's* two-part test still applies to determine whether claims are derivative or direct. *El Paso Pipeline GP Company, L.L.C. v. Brinckerhoff*, 152 A.3d 1248 (Del. 2016) (breach of a contractual duty owed to a partnership is derivative under *Tooley* ).

belonging to the corporation, *Tooley* does not affect our answer to the certified question.

*Id.,* at 1127.

Here, Plaintiffs generally allege that they are investors in FSL's shares and/or promissory notes, and that Defendants deceived them into investing in the company by concealing material information and misrepresenting the financial condition of the company. They allege that Defendants failed to disclose to them the covenants in the WBI Note and FSL's ongoing violation of them. As alleged, Defendants "purposefully withheld information" from the board, which included some Plaintiffs, while Garzella disseminated false information regarding the company's product and customers under contract. "[U]sing false representations to induce the purchase of securities would seem a paradigmatic example of securities fraud." *Lorenzo v. Securities and Exchange Commission,* 139 S. Ct. 1094 (2019) (even if not liable as the maker of an untrue statement of material fact, dissemination of false and misleading statement with intent to defraud can violate the anti-fraud provisions of federal securities law). Applying the reasoning of *Citigroup,* the Court finds that the federal securities claims alleged in Count I are not being brought on behalf of FSL but for Plaintiffs personally. *Citigroup,* at 140 A. 3d 1127.

In *In re Activision Blizzard, Inc. Stockholder Litigation,* 124 A. 3d 1025 (Del. Ch. 2015), the Delaware Court of Chancery approved a settlement regarding a stockholders' derivative action against a controlling stockholder, members of the

corporate board and the outside directors arising out of a restructuring transaction. In considering objections to the settlement, the court discussed the claims that would be released, analyzing whether they were derivative, direct "dual-attribute"[17] or personal claims.

> Quintessential examples of personal claims would include a contract claim for breach of an agreement to purchase or sell shares or a tort claim for fraud in connection with the purchase or sale of shares . . . A Rule 10b–5 claim under the federal securities laws is a personal claim akin to a tort claim for fraud. The right to bring a Rule 10b–5 claim is not a property right associated with shares, nor can it be invoked by those who simply hold shares of stock. (citations omitted). It arises only when there has been fraud in connection with the purchase or sale of a security. (citations omitted). As such, the Rule 10b–5 claim is personal to the purchaser or seller and remains with that person; it does not travel with the shares.

*Id.*, at 1056.

As investors in FSL and applying Delaware law, Plaintiffs' federal securities fraud claims under §§ 10(b) and 20(a) alleged in Count I are personal to each of them and not to FSL. *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 95 S.Ct. 1917 (1975) (standing to bring a private damage action under Rule 10b-5 is limited to actual "purchasers" or "sellers" of securities as defined by the Exchange Act). Plaintiffs have alleged an injury in fact that is concrete, particularized, actual and fairly traceable to Defendants' conduct of withholding material information and/or misrepresenting the financial condition and

---

[17] Under Delaware law, a claim is considered a "dual-attribute claim" when the answers under the *Tooley* two-part analysis can be answered either way. *Id.*, at 1052.

operations of FSL.  Finally, Plaintiffs seek a remedy likely to be redressed by a favorable judicial decision.  *Spokeo*, 136 S.Ct. at 1547.

Because the Court finds that Plaintiffs have standing to assert the federal securities claims in Count I, Defendants' Motion to Dismiss, pursuant to Fed. R. Civ. P. 12(b)(1), Doc. #21, and the Notices of Joinder, Doc. ##27 and 28, adopting this motion, are overruled.


### D.  Standard of Review for a Motion to Dismiss Pursuant to Rule 12(b)(6)

Federal Rule of Civil Procedure 8(a) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  The complaint must provide the defendant with "fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal of a complaint on the basis that it "fail[s] to state a claim upon which relief can be granted."  The moving party bears the burden of showing that the opposing party has failed to adequately state a claim for relief.  *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citing *Carver v. Bunch*, 946 F.2d 451, 454-55 (6th Cir. 1991)).  The purpose of a motion to dismiss under Rule 12(b)(6) "is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true."  *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993).  In ruling on a 12(b)(6) motion, a court must "construe the

complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Handy-Clay v. City of Memphis,* 695 F.3d 531, 538 (6th Cir. 2012) (quoting *Treesh*, 487 F.3d at 476).

Nevertheless, to survive a motion to dismiss under Rule 12(b)(6), the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Unless the facts alleged show that the plaintiff's claim crosses "the line from conceivable to plausible, [the] complaint must be dismissed." *Id.* Although this standard does not require "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.* at 555. "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). Legal conclusions "must be supported by factual allegations" that give rise to an inference that the defendant is, in fact, liable for the misconduct alleged. *Id.* at 679.

In ruling on a Rule 12(b)(6) motion, a court generally only considers the plaintiff's complaint. If, however, " ... a plaintiff references or quotes certain documents, ... a defendant may attach those documents to its motion to dismiss, and a court can then consider them in resolving the Rule 12(b)(6) motion without converting the motion to dismiss into a Rule 56 motion for summary judgment." *Watermark Senior Living Retirement Communities, Inc. v Morrison Management*, 905 F.3d 421 (6th Cir. 2018).

**E. Because Plaintiffs Have Failed to Plead their Federal Securities Claims in Count I with Particularity, as Required by Fed. R. Civ. P. 9(b) and Under the Private Securities Litigation Reform Act ("PSLRA"), Defendants' Motion to Dismiss Count I Pursuant to Rule 12(b)(6), Doc. #21, and the Notices of Joinder, Doc. ##27 and 28, are Sustained.**

To plead a securities fraud suit under § 10(b), a plaintiff must allege: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37-38, 131 S.Ct. 1309 (2011) (internal quotation marks omitted). As with any fraud claim, a plaintiff must also satisfy the requirements of Fed. R. Civ. P. 9(b) by stating with particularity the circumstances constituting fraud. *Dougherty v. Esperion Therapuetics, Inc.*, 905 F.3d 971, 978 (6th Cir. 2018). Accordingly, Plaintiffs must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Id.* (citation omitted). In addition to satisfying the requirements under Rule 9(b), the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4, et seq., "imposes two additional pleading requirements. Plaintiffs' complaint must "'specify each statement alleged to have been misleading' along with 'the reason or reasons why the statement is misleading,'" and "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Ind. State Dist. Council of Laborers & Hod Carriers Pension & Welfare Fund v.*

*Omnicare, Inc.* (*Omnicare I* ), 583 F.3d 935, 942 (6th Cir. 2009) (quoting 15 U.S.C. §

78u-4(b)(1), (b)(2) ).[18]

Defendants argue that Plaintiffs federal securities claims in Count I should

be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). They assert that the Complaint

does not plead (1) fraud as required by Fed. R. Civ. P. 9(b) and the PSLRA; (2)

scienter; or (3) that a sale of securities occurred. Defendants Advanced CFO and

Henriksen also contend that the Complaint fails to allege that they made any

"actual false or misleading statements" to Plaintiffs. In essence, Defendants

assert that Plaintiffs have not successfully pled the first three elements of a § 10(b)

claim: (1) a material misrepresentation or omission by the defendant; (2) scienter;

and (3) a connection between the misrepresentation or omission and the purchase

or sale of a security. In analyzing the Complaint's allegations concerning these

three elements, the Court agrees and finds that Plaintiffs have not pled a federal

securities claim in Count I.

The Complaint alleges that that FSL was "under the control" of Defendants

Garzella, Henriksen, Wootton and Advanced CFO and that FSL failed to disclose

---

[18] The requirements for private securities fraud actions pursuant to 15 U.S.C. § 78u-4(b) that, regarding the misleading statements and omissions, the complaint "shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." *Id.* at § 78u-4(b)(1). Additionally, the complaint must allege that, "with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Id.* at § 78u-4(b)(2).

certain information to Plaintiffs and/or made false statements about the company's operation. To plead an "actionable material misrepresentation or omission requires a plaintiff to allege facts demonstrating two things: (1) that a defendant made a statement or omission that was false or misleading; and (2) that this statement or omission concerned a material fact." *In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 470. (6th Cir. 2014). A misrepresentation is an affirmative statement that is false or misleading and an omission is a defendant's failure to disclose information when there was a duty to do so. *Id.* at 471.

With respect to material omissions, Plaintiffs allege that Defendants failed to disclose to them that there were covenants in the WBI Note. Specifically, they allege that FSL did not disclose to them that if the WBI Note was unpaid, WBI needed to give its written consent to FSL before it could pay Plaintiffs' promissory notes. Plaintiffs also were allegedly not told about covenants in the WBI Note that prohibited FSL from making loan repayments, authorizing capital expenditures or taking on additional debt. Plaintiffs allege that the disclosure of these covenants and FSL's violation of them would have revealed FSL's "true financial state" and affected their decision to invest in the company. None of these alleged material omissions concerning the covenants in the WBI Note,[19] however, identify the statement allegedly made by one or more of the Defendant(s) that created a "duty" to make the disclosures to Plaintiffs regarding the covenants. *Id.* A § 10(b)

---

[19] Defendants do not challenge whether any of these alleged omissions were "material."

22

claim does not create an affirmative duty to disclose any and all information, but only such information that is necessary to make "statements made, in the light of the circumstances under which they were made, not misleading." *Matrixx Initiatives*, 563 U.S., at 44; 17 CFR § 240.10b–5(b)); *Basic v. Levinson*, 485 U.S., 224, 239, n. 17, 108 S.Ct. 978 ("Silence, absent a duty to disclose, is not misleading under Rule 10b–5").[20] Absent allegations that one or more or all Defendants made certain statements to each Plaintiff that created an affirmative duty for them to make the statements not misleading, Plaintiffs have not shown a material omission.

The Complaint also alleges that material misrepresentations were made to Plaintiffs. These include allegations that Garzella provided "unrealistic sales projections" to the FSL board,[21] that Plaintiffs were falsely told that the FSL software was complete and that customers were satisfied with it and under contract. Plaintiffs also allege that, from February 2017 through November 2017, Henriksen "blessed" financial statements and *pro formas* "used to gain investment" without verifying the accuracy by accessing the accounting system.

---

[20] The Complaint alleges that Plaintiffs purchased shares and made investments in promissory notes at different times, but does not allege what information each Plaintiff received (and from whom) or relied on in making their decisions to invest in FSL.

[21] The Complaint alleges that "Garzella rarely provided the Board of Directors with meeting minutes as required under state law" and that the minutes were inaccurate. Doc. #1, PageID#12. The Complaint, however, does not cite the Delaware law that was allegedly violated by Garzella, what was inaccurately reflected in the minutes and when, if at all, Plaintiffs relied upon them.

There is no date stating when each Plaintiff heard or received information regarding these material misrepresentations and who provided this information to them. Although the Complaint alleges that, in a ten-month period in 2017, Henriksen "blessed" financial documents without verifying their accuracy with the FSL accounting system, there are no facts alleged explaining what false information was in the documents and when each Plaintiff received and reviewed the documents, if at all.[22]

For these reasons, the Court finds that Plaintiffs have failed to plead a material misrepresentation by any Defendant that satisfies Fed. R. Civ. P. 9(b) and the PLSRA.

Defendants next assert that the Complaint fails to plead scienter. As argued by them, the Complaint does not satisfy "the higher standard imposed by Congress," requiring that a securities fraud complaint "'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'" *In re Omnicare, Inc. Securities Litigation*, 769 F.3d at 473. (citing 15 U.S.C. § 78u–4(b)(2)). The Sixth Circuit has defined scienter, "in the securities-fraud context," as including "a knowing and deliberate intent to manipulate, deceive, or defraud, and recklessness." *Doshi v. General Cable Corporation*, 823 F.3d 1032, 1039 (6th Cir. 2016) (citing *Ley v. Visteon Corp.*, 543 F.3d 801, 809 (6th Cir. 2008)), abrogated on other grounds by *Matrixx Initiatives, Inc.*, 563 U.S. at 48-

---

[22] The Complaint alleges that some Plaintiffs invested prior to February 2017. Doc. #1, PageID#10.

50. (2011). Recklessness is defined as "highly unreasonable conduct which is an extreme departure from the standards of ordinary care," *Doshi*, 823 F.3d at 1039 (citing *Frank v. Dana Corp.*, 646 F.3d 954, 959 (6th Cir. 2011) quoting *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 681(6th Cir. 2004), *abrogated on other grounds* by *Matrixx*, 563 U.S. at 48–50)), and "akin to conscious disregard." *Id.*, (quoting *PR Diamonds*, 364 F.3d at 681). "Before drawing an inference of recklessness, courts typically require multiple, obvious red flags, demonstrating an egregious refusal to see the obvious, or to investigate the doubtful." *Doshi*, 823 F.3d at 1039. In analyzing scienter, the Court adopts the standard that accepts all factual allegation of the Complaint as true, considers the pleading in its entirety and decides based on "whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23, 127 S.Ct. 2499, (2007).

Although Plaintiffs allege with particularity sufficient facts showing that Garzella acted with the required state of mind, scienter is not pled as to Wootton, the corporate attorney, nor as to Henriksen, the CFO. As alleged, Garzella engaged in specific acts of self-dealing, intentionally provided misinformation to the board of directors and allegedly had an "abusive style of management" that he used to control the bookkeeper to prevent others from knowing of his actions. As to Wootton and Henriksen, however, the Complaint pleads only conclusory allegations. Plaintiffs allege that these two Defendants "aided" Garzella, worked with him to "negotiate the terms of the Note," and along with Garzella

"controlled" FSL. The Complaint does not allege facts explaining what Wootton and Henriksen did to "aid" Garzella or when and how they purposefully withheld financial information that would have disclosed the true state of FSL's operations to the board of directors. Although the Complaint alleges that Henriksen "blessed financial statements, *pro formas* used to gain investment, and other documents" sent to WBI and the FSL board of directors without accessing the FSL accounting system to verify their accuracy, this statement does not explain what was inaccurate in these documents, compared to what the FSL accounting system would have disclosed. As currently pled, there are no facts alleging that these two Defendants had "knowing and deliberate intent to manipulate, deceive or defraud" Plaintiffs. *Doshi*, 823 F.3d at 1039. Nor are there any allegations in the Complaint showing that Henriksen's alleged failure to verify the accuracy of the financial documents with the accounting system is "highly unreasonable conduct" amounting to "an extreme departure from the standards of ordinary care," *Id.*, such as required to constitute recklessness. At most, Plaintiffs plead negligence on the part of Henriksen which is not scienter, and cannot be asserted by third parties under Delaware law. *Trenwick Am. Litig. Tr. v. Ernst & Young, L.L.P.*, 906 A.2d 168, 215–16 (Del. Ch. 2006), aff'd sub nom. *Trenwick Am. Litig. Tr. v. Billett*, 931 A.2d 438 (Del. 2007).

For the above stated reasons, the Court finds that, although the Complaint pleads the element of scienter as to Garzella, Plaintiffs have failed to plead this

second element of a securities fraud claim as to Advanced CFO, Henriksen and Wootton.

Defendants' final argument is that Plaintiffs fail to plead a connection between the misrepresentation or omission and the purchase or sale of a security. A federal securities fraud claim must allege facts showing that the representation or omission was "in connection with the purchase or sale of securities" or "coincides" with the purchase or sale of securities. *Merrill Lynch Pierce, Fenner & Smith Inc. v Dabit*, 547 U.S. 71, 85 (2006) ("The requisite showing ... is deception 'in connection with the purchase or sale of any security,' not deception of an identifiable purchaser or seller." (citation omitted)). This phrase is construed broadly. *Id.*

Because the courts construe the third element of a securities fraud claim, "in connection with the purchase or sale of securities," broadly, the Court finds that Defendants' motion under Fed. R. Civ. P. 12(b)(6) on this issue is overruled.

Count I of the Complaint also alleges violations under § 20(a) of the Exchange Act against Defendants. This section provides that "[e]very person who ... controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person." *Doshi*, 823 F.3d at 1045, (quoting 15 U.S.C. § 78t(a)). Accordingly, "the 'controlled person' must have committed an underlying violation of the securities laws of the rules and regulations promulgated thereunder" and second, "the 'controlling person'... must have

directly or indirectly controlled the person liable for the securities law violation."

17 C.F.R. § 230.405. *In re Huntington Bancshares Inc. Securities Litigation*, 674 F.

Supp. 2d 951 (S.D. Ohio 2009) (citing *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671,

696 (6th Cir. 2004), *abrogated on other grounds by Matrixx Initiatives*, 563 U.S. 27

(2011).

As stated above, the Court does not find, based on the allegations of the

Complaint, that a securities law violation exists. Moreover, and as argued by

Advanced CFO and Henrikson, Plaintiffs have not pled facts showing that any

controlling person, other than Garzella, had the authority to control and to

influence the corporate policy of FSL that resulted in the primary violation.

For the reasons stated above, Defendants' Motion to Dismiss, pursuant to

Fed. R. Civ. P. 12(b)(6), Doc. #21, Wooton's Notice of Joinder, Doc. #28 and

Garzella's Notice of Joinder, Doc. #27, are sustained as to Plaintiffs' federal

securities claim under § 20(a).


### F. Plaintiffs' State Law Claims

The Complaint also alleges claims of common law fraud, breach of fiduciary

duty and unjust enrichment in Counts II, III and IV. Although a federal court with

federal question jurisdiction under § 1331 may exercise jurisdiction over state-law

claims because they "derive from a common nucleus of operative fact," *Mine*

*Workers v. Gibbs*, 383 U.S. 715, 725 86 S.Ct. 1130, (1966), the Court has

determined that no subject matter jurisdiction exists over the state law claims,

because Count I, asserting violations of § 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder, and § 20(a) of the Exchange Act, has been dismissed. Accordingly, the state law claims are dismissed without prejudice.[23]

## III. Conclusion

For the reasons explained above, Defendants Henriksen and Advanced CFO's Motion to Dismiss Plaintiffs' Complaint, pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6), Doc. #21, as to Count I of the Complaint, is OVERRULED as to Fed. R. Civ. P. 12(b)(1) and SUSTAINED as to Fed. R. Civ. P. 12(b)(6). *Pro se* Defendant Garzella's Notice of Joinder, Doc. #27, and *pro se* Defendant Wootton's Notice of Joinder, Doc. #28, as to Count I of the Complaint, is OVERRULED as to Fed. R. Civ. P. 12(b)(1) and SUSTAINED as to Fed. R. Civ. P. 12(b)(6).

The dismissal of Count I is without prejudice to Plaintiffs filing an amended complaint within 14 days from the date of this filing subject to the strictures of Fed. R. Civ. P. 11.

.

Because the Court lacks subject matter jurisdiction over the state law claims alleged in Counts II, III and IV, the Court makes no ruling on Defendants Henriksen

---

[23] In dismissing these state law claims, the Court is making no determination under Delaware law whether the claims are either direct or derivative claims.

and Advanced CFO's Motion to Dismiss, Doc. #21, on *Pro se* Defendant Garzella's

Notice of Joinder, Doc. #27, and *pro se* Defendant Wootton's "Notice of Joinder,"

Doc. #28

Date: April 30, 2021

(tp - per Judge Rice authorization after his review)

**WALTER H. RICE**
**UNITED STATES DISTRICT JUDGE**