IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

M. CHRISTOPHER LOCKHART,           :
et al.,

    Plaintiffs,            :
                  Case No. 3:19-cv-00405
   v.            :
                  JUDGE WALTER H. RICE
JACK GARZELLA, et al.,

    Defendants.            :

---

DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING
IN PART DEFENDANTS JOHN BRENT HENRIKSEN AND CFO
SOLUTIONS, L.C. D/B/A ADVANCED CFO SOLUTIONS, LLCS'
MOTION TO DISMISS THE AMENDED COMPLAINT PURSUANT TO
FED. R. CIV. P. 12 (b)(1) AND 12 (b)(6) (DOC. #43) JOINED, INSOFAR
AS JOHN BRENT HENRICKSEN'S PART IN SAID MOTION IS
CONCERNED, BY DEFENDANTS JOHN WOOTTON (DOC. #46) AND
DEFENDANT JACK GARZELLA (DOC. #47)

---

   Plaintiffs have filed an Amended Complaint, Doc. #39, alleging federal

securities violations and state law claims for fraud, breach of fiduciary duty and

unjust enrichment.  Named as Defendants are three former officers of Flying Labs,

Inc. ("FSL" or "the Company"), and a company that provided it financial services,

Advanced CFO.  FSL has since filed for bankruptcy.

   Pending before the Court is a Motion to Dismiss pursuant to Fed. R. Civ. P.

12(b)(1) and Fed. R. Civ. P. 12(b)(6) ("Motion to Dismiss" or "Motion"), Doc. #43,

filed by Defendants, CFO Solutions, L.C. d/b/a Advanced CFO Solutions, LLC

("Advanced CFO"),[1] and John Brent Henriksen ("Henriksen"), an owner and

partner of Advanced CFO, who also served as FSL's Treasurer and Chief Financial

Officer ("CFO"). Doc. #39, PageID##310, 312 and 328. Defendants, John Wootton

("Wootton"), the Company's attorney and Corporate Secretary, and Jack Garzella

("Garzella"), the Chief Executive Officer ("CEO") and the Chairman of the Board of

Directors, *Id.*, PageID#312, both *pro se*, have each filed a Notice of Joinder in the

Motion. Doc. ##46 and 47, respectively. Henriksen, Advanced CFO, Garzella and

Wootton are collectively referred to as "Defendants."

In response, Plaintiffs have filed a Combined Memorandum in Opposition to

the Motion to Dismiss and *pro se* Joinder, Doc. #50, and Henriksen and Advanced

CFO have filed a reply. Doc. #53. Garzella has also filed a sur-reply. Doc. #54.

For the reasons set forth below, the Court sustains in part and overrules in

part the Motion to Dismiss Pursuant to Fed. R. Civ. P. 12 (b)(1) and 12 (b)(6), Doc.

#43, in which Wootton and Garzella have joined, insofar as Henricksen is

concerned. Doc. ##46 and 47.[2]

---

[1] Advanced CFO formally identifies itself as "CFO Solutions, L.C. d/b/a Advanced CFO Solutions, LLC" and states it is "incorrectly identified" by Plaintiffs "as CFO Solutions, LLC d/b/a Advanced CFO Solutions." Doc. #43, PageID#544. The Court will use said names as suggested by Defendant.

[2] The Court will refer to the Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), Doc. #43, in which Wootton and Garzella have joined, insofar as Henricksen is concerned, Doc. ##46 and 47, as the "Motion to Dismiss." Additionally, because Advanced CFO's Motion to Dismiss is filed jointly with Henriksen, Doc. #43, it is overruled and sustained to the same extent that Henricksen's motion is overruled and sustained

## I. Background Facts

### A. Introduction

Flying Software Labs, Inc. ("FSL"), a Delaware corporation located in Utah, developed and marketed software products designed to assist aviation related activities. Doc. #39, PageID#310; Doc. #39-1, PageID#341.[3] In early to mid-2016, Garzella, Henriksen and Wootton, on behalf of FSL, entered into negotiations with the Wayne Brown Institute ("WBI"), a venture capitalist investor, for a $400,000 secured five-year note ("Note"). *Id.*, PageID#313; Doc. #39-1, PageID#342. Wootton negotiated the terms of the Note. *Id.*, PageID#313. On October 30, 2016, Garzella, as the CEO of FSL, signed a "Letter Agreement" or "Term Sheet" with WBI which prohibited FSL from repaying any debt, other than its accounts payable, until the Note was fully repaid. Doc. #39-1, PageID#342."[4] On November 21, 2016, FSL signed the WBI Note, Doc. #39, PageID##313 and 315, which included "specific terms" or "covenants." *Id.*, PageID##315 and 326. These terms prohibited FSL from either (1) entering into a new secured loan and/or permitting a lien or encumbrance on its assets or (2) paying "any principal or interest on another promissory note made" between FSL and its officers, directors, members or managers, until the WBI Note was fully repaid. *Id.*, PageID#315. The Note's

---

[3] In setting forth the factual background, taken from the Amended Complaint, the Court has accepted Plaintiffs' allegations as true and has construed them in the light most favorable to them.

[4] The Amended Complaint incorrectly alleges the Term Sheet was signed on October 16, 2016. Doc. #39, PageID#313.

covenants also required WBI's prior written consent before FSL made any payment of principal or interest on any other debt obligation to anyone who was not an officer, director or manager, and before it made any capital expenditure greater than $25,000. *Id.* Henriksen and Wootton reviewed these terms when it was finalized. *Id.*, PageID#315.

During the time Defendants were negotiating with WBI on the Term Sheet, and after the Note was signed, Plaintiffs, Christopher Lockhart ("Lockhart"), Evan C. Barrett, Greg Bell, Jim Brunke, Julian Castelli, Cybeck Capital VI, LLC, Gary M. Kopacka, Bill Mestdagh, Thomas J. Meyer, Diane R. Meyer, James R. Sever, Donald Slivensky, Donald Slivensky Living Trust with Donald Slivensky as Trustee, Daniel Epperson and Thomas W. Thompson (collectively, "Plaintiffs"), became shareholders in the Company and/or "an investor in FSL via promissory notes."[5] Their investments in FSL stock and promissory notes were made at different times between October 11, 2016, and October 31, 2017. *Id.*, PageID##324-326. Defendants induced "potential investors"[6] to invest in FSL through "pitches" which involved "presentations, discussions[,] and the production of numerous

---

[5] The Amended Complaint refers to "promissory notes," "unsecured promissory notes," "promissory notes with warrant coverage" or "convertible promissory notes," *Id.*, PageID##324-326. Although not defined in the Amended Complaint, the latter two promissory notes, in general, give a holder, under certain circumstances, the option to convert their debt to equity in the Company.

[6] Because the Amended Complaint alleges Plaintiffs are "shareholders" and/or "investors in FSL via promissory notes," Doc. #39, PageID#310, the Court construes allegations concerning "investors," "potential investors" and "actual investors" to be "Plaintiffs."

documents. . . describing the investment opportunity." *Id.*, PageID#312. The "numerous documents" consisted of two PowerPoint presentations and other printed materials that described the investment opportunity in FSL, its contracts with customers, the status of its software product and its finances and debt structure.[7] *Id.*, PageID#312; Doc. 39-1, PageID##340-534. Garzella was the "primary individual" who solicited Plaintiffs and provided them with the information used in the presentations and discussions. *Id.* Henrickson, as the Treasurer and CFO of FSL, and sometimes with Gazella's assistance, prepared the financial information that was disseminated to Plaintiffs through Garzella's PowerPoints, Doc. #39, PageID#317. He would engage in a "'reworking' of the numbers in order to get a 'good pro forma.'" *Id.*, PageID#317. He prepared financial documents for FSL, referred to as "pro formas" and "financial projections." *Id.*, PageID##312 and 318. These documents were also part of the pitches "given to potential investors." *Id.* Henriksen, whose actions are imputed to Advanced CFO,[8] would also allegedly misrepresent debts as preferred stock, and although responsible for "compiling the numbers" used in the pro formas, he

---

[7] The "numerous documents" used in the "pitches" were prepared on different dates between June 26, 2016, and August 1, 2017. Doc. #39, PageID#312 and 319; Doc. #39-1, PageID#469.

[8] As alleged in the Amended Complaint, Advanced CFO entered into a contract with FSL "to act as a professional CFO" for the company. Doc. #39, PageID#328. This Defendant also agreed to certain "project details" which included to "serve as Treasurer for the company as well as CFO . . .be responsible for investing and spending of funds. . .review and clean up historical financials to comply with GAAP. . .and oversee the accounting function." *Id.* Henricksen served in this role on behalf of Advanced CFO from 2015 through March 2019.

did not know how to prepare them and relied on Garzella. *Id.*, PageID##318 and 329. Henriksen also did not access FSL's accounting system to verify the accuracy of the financial documents. Wootton and Garzella drafted and distributed the promissory notes "given to potential investors and Plaintiffs." *Id.* at PageID##312-313.

### B. Misrepresentations and Omissions

In a PowerPoint presentation prepared by Garzella and presented to Plaintiffs on June 26, 2016,[9] he falsely stated that specific "customers were under contracts" with FSL when, in fact, most were under "unenforceable agreements" and several of the entities were not even its customers. *Id.*, PageID##313 and 319. At the end of this PowerPoint presentation, under a heading entitled "Pro Forma with FBO/JV Pipeline"[10] "Summary Financial Projections," was a Statement of Operations for 2016 through 2020 prepared by Henriksen. *Id.*, PageID#320; Doc. #39-1, PageID#486. The "pro[ ]forma" was "based on information known" by him and Garzella to be false since it showed revenue from nonexistent contracts and was created with the intent "to induce Plaintiffs to invest [in] FSL." *Id.*, PageID#320; Doc. #39-1, PageID#486.

Following this PowerPoint presentation and through October 2, 2016, Garzella and Wootton drafted and distributed promissory notes to potential

---

[9] The PowerPoint presentation is dated June 30, 2016. Doc. #39-1, PageID#469.

[10] The Amended Complaint does not define these terms.

6

investors payable in three years. *Id.*, PageID##313-314. Additionally, on October 14, 2016, Wootton revised and negotiated the terms in these notes to potential investors, including Plaintiff James R. Sever. *Id.*, PageID#314. Although this drafting, distributing and negotiating of promissory notes was occurring during the time that FSL was negotiating with WBI on the Term Sheet for the Note, Garzella and Wootton failed to disclose to potential investors that terms for the WBI Note were being negotiated and/or that their promissory notes would only be repaid after the WBI Note was paid in full. *Id.*, PageID#314. At the time the three-year promissory notes were signed by Plaintiffs, Defendants knew that FSL would be unable to repay both the five-year WBI Note and Plaintiffs' three-year promissory notes within three years. *Id.*, PageID#314. On March 20, 2017, after the WBI Note was finalized, Garzella and Wootton prepared and distributed additional promissory notes to Plaintiffs with repayment due in two years, as opposed to three years. Again, these promissory notes did not mention the WBI Note's terms. *Id.*, PageID#318.

Garzella also prepared and gave Promissory Note Term Sheets ("Sheets") to all Plaintiffs. *Id.*, Page ID##316-317. These documents detailed "the stock offering and the convertible debt offering" for investors "to consider in connection with their purchase of securities or investments in FSL." *Id.*, PageID#316. These Sheets represented that Plaintiffs would receive payment from FSL in one to three years and also stated that the Company would provide them with future information "about any other debt that contained terms that

were more favorable" than their promissory notes. *Id.*, Page ID##316-317. Garzella, however, failed to disclose that the repayment timeline for the promissory notes was only possible if FSL first repaid the WBI Note. *Id.*, PageID##316-317. Additionally, Defendants provided no information to Plaintiffs about the WBI Note, even though its terms were more favorable than their promissory notes. *Id.*, PageID#317.

Garzella also prepared a second PowerPoint presentation dated November 14, 2016. *Id.*, PageID#314. This presentation was "provided to all Plaintiffs prior to their investments" and included a "Pro Forma" Statement of Operations for 2017 through 2020 that Henriksen "created, reviewed[,] and approved." *Id.*, PageID#314; Doc. #39-1, PageID#486. Although Garzella and Henriksen knew the terms in the WBI Term Sheet, they "did not disclose the existence or terms of that executed Term Sheet" to "potential investors" in this presentation. Doc. #39, PageID#314. Instead, these Defendants omitted and hid it from them. *Id.* PageID#314.

Also, Plaintiffs received a document prepared by Garzella, dated November 2016, entitled "Investor Materials." *Id.*, PageID#315; Doc.#39-1, PageID##364-385. It stated that the "FSL active sales pipeline has exploded" and listed companies that had signed agreements with FSL. Doc.#39-1, PageID##364-385. Plaintiffs allege, upon information and belief, that as of November 2016, none of the companies had signed contracts with FSL. Doc. #39, PageID#320. The Investor Materials also falsely "portrayed the [FSL] software as complete and 'integrated,'"

8

*Id.*, PageID#321, and included, under the heading "Financial Projections Pro Forma Summary," a Statement of Operations and a "Pro Forma Balance Sheet" for 2017 through 2020, both of which were prepared by Henriksen. *Id.*, PageID#314; Doc. #39-1, PageID##384-385. The "Pro Forma Balance Sheet listed FSL's liabilities and shareholder's equity" but failed to reference "the WBI Note Term Sheet" or any of its restrictive terms. *Id.*, PageID#315.

On December 9, 2016, Garzella "updated FSL's Private Placement Document ("PPD")" which "outlined the risks associated with investing" and was for "potential investors to rely upon in connection with their investments in FSL." *Id.*, PageID#316; Doc. #39-1, PageID##386-399. The PPD did not disclose FSL's inability to pay a potential investor's promissory note because of the terms of the WBI Note. Doc. #39, PageID#316. Plaintiffs allege that Risk Factor #8 in the Private Placement Document, which "emphasized that FSL would need to raise additional capital by issuing additional shares that would reduce a potential investor's ownership percentages if they did not participate in such offerings," created a duty for Garzella to disclose the terms of the WBI Note. *Id.*

In Garzella's "investor deck presentation," he falsely claimed two companies, Shell Aviation Fuel and Epic Fuels, were "under contract" with FSL and Phillips 66 Aviation Fuel and Avfuel Corporation were in final negotiations

with the Company. *Id.*, PageID#321. This presentation also falsely stated that Avfuel "'just signed'" a contract with FSL. *Id.*; Doc. #39-1, PageID#512.[11]

Garzella also prepared two Private Placement Memoranda, one dated June 1, 2017 ("June PPM"), and the second dated August 1, 2017 ("August PPM"). Doc. #39, PageID##318-319. Although both documents were given to "potential investors" and "actual investors" and addressed the negative impact on ownership interests, if FSL issued more shares to obtain additional capital, neither of these documents disclosed information concerning FSL's inability to pay an investor's promissory note because of the terms of the WBI Note. *Id.* Garzella also "omitted the terms of the WBI Secured Note prohibiting the issuance of additional shares." *Id.*, PageID#319.

In addition to the above, "potential and actual investors" in FSL and its Board of Directors were never told that Garzella breached the covenants of the WBI Note. These breaches occurred when Garzella, without obtaining WBI's prior written consent, had FSL (1) make repayments to him for loans he had made to the Company; (2) invest "hundreds of thousands of dollars" in a new version of software and (3) assume over $1.3 million of liens and indebtedness in connection with FSL's purchase of Vessix, Inc. *Id.*, PageID##322 and 323. Many of the Plaintiffs acquired shares in FSL or became investors in promissory notes at a time when Defendants were violating the covenants of the WBI Note. *Id.*,

---

[11] The Amended Complaint does not allege when Garzella created this presentation or which Plaintiffs, if any, saw it prior to investing.

PageID#325. The disclosure to "the potential and actual investors" of the Note's covenants and FSL's violation of them would have revealed the Company's "true financial state" and would have caused Plaintiffs either to renegotiate the terms of their promissory notes and share purchase prices or not to enter into the transactions with FSL. *Id.* Garzella also rarely provided the Board of Directors with minutes from meetings, as required under state law, and, when he did, they did not accurately reflect what occurred at the meetings. *Id.*, PageID#326. He also provided the Board, many of whom were investors, with unrealistic sales projections. *Id.*, PageID#327. When they asked for further information, Garzella, Henriksen, Advanced CFO and Wootton deliberately withheld information from them that would have disclosed FSL's true financial condition. *Id.*, PageID#326. Because of Garzella's "abusive" management style to employees, payments were made to him without documentation submitted to the Board of Directors. *Id.*, PageID##322-323.

Henricksen, whether by neglect or active participation, assisted Garzella in violating the Note's covenants and facilitated the harm to FSL when he "blessed financial statements" of FSL without having access to the accounting system, gave balance sheets to investors that contained errors and was unable to answer questions about the financial documents that he had prepared. *Id.*, PageID#328-329. In early 2018, Plaintiff Lockhart, a member of the Board of Directors, as well as a shareholder and "investor in FSL via promissory notes," was given the authority to sell the assets of FSL and discovered the falsehoods, self-dealings

and manipulations. *Id.*, PageID#327. By the time of his discovery, however, FSL's financial and operational condition were "in such poor shape" that FSL "was liquidated in bankruptcy"[12] and Plaintiffs received "no payment for their investments and shares." *Id.*

Plaintiffs allege four counts against Defendants: Count I, federal securities violations under §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 ("the Exchange Act"), 15 U.S.C. §§78(b) and 78t(a) and Rule 10b-5 promulgated thereunder by the U.S. Securities and Exchange Commission ("SEC"), 17 C.F.R. §240.106-5 and §§12(a)(2); and in Counts II-IV, state law claims of common law fraud, breach of fiduciary duty and unjust enrichment. Doc. #39, PageID##330-338. Subject matter jurisdiction exists pursuant to 28 U.S.C. §§1331, 1337 and Section 22 of the Securities Act, 15 U.S.C. §77y, and /or Section 27 of the Exchange Act, 15 U.S.C.§78aa. Doc. #39, PageID##309.

Defendants move for dismissal of the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). Doc. #43. Since the Rule 12(b)(6) motion is moot if there is no subject matter jurisdiction, *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir.1990), a court is "bound to consider the 12(b)(1) motion first." Following this analysis, the Court will consider Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6).

---

[12] FSL filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code on November 27, 2018, in the United States Bankruptcy Court for the District of Utah, and on April 5, 2019, an Order Converting Case to Chapter 7 was filed. Doc. #33, PageID#262.

### III. Legal Analysis

**A. Standard of Review for a Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1)**

"Standing is a jurisdictional requirement," and "[i]f no plaintiff has standing, then the court lacks subject-matter jurisdiction" and the complaint must be dismissed. *Tennessee General Assembly v. United States Dep't of State*, 931 F.3d 499, 507 (6th Cir. 2019); *Lyshe v. Levy*, 854 F.3d 855, 857 (6th Cir. 2017) (citation omitted). This doctrine "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547, 194 L. Ed. 2d 635 (2016), as revised (May 24, 2016). Standing "assures that there is a real need to exercise the power of judicial review in order to protect the interests of the complaining party." *Summers v. Earth Island Inst*, 555 U.S. 488, 493, 129 S.Ct. 1142, 173 L.Ed.2d 1 (2009).

To establish standing, a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."' *Spokeo*, 136 S.Ct. at 1547. A plaintiff establishes injury in fact when he shows that he suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Id.*, at 1548 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130 (1992) (internal quotation marks omitted)). The plaintiff carries the burden of establishing those three elements and, at the pleading stage, the plaintiff must clearly allege facts demonstrating

each element. *Id.* Moreover, standing must be established for each claim alleged. *Hagy v. Demers & Adams*, 882 F.3d 616, 620 (6th Cir. 2018) (citing *DaimlerChrysler Corp v. Cuno*, 547 U.S. 332, 352 (2006)). If the plaintiff fails to show standing, "it is within the trial court's power to allow or to require the plaintiff to supply, by amendment to the complaint or by affidavits, further particularized allegations of fact deemed supportive of plaintiff's standing." *Warth v. Seldin,* 422 U.S. 490, 501, 95 S.Ct.2197 (1975). If after this amendment or supplemental filing, standing "does not adequately appear from all materials of record, the complaint must be dismissed." *Id.*

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) may either "challenge the sufficiency of the pleading itself (facial attack) or the factual existence of subject matter jurisdiction (factual attack)." *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014) (citing *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994)). "A facial attack goes to the question of whether the plaintiff has alleged a basis for subject matter jurisdiction, and the court takes the allegations of the complaint as true for purposes of Rule 12(b)(1) analysis," but "[a] factual attack challenges the factual existence of subject matter jurisdiction." *Id.* Making this "crucial distinction, often overlooked," is essential to determining the proper standard of review to apply. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996) (quoting *Mortensen v. First Federal Savings and Loan Ass'n*, 549 F.2d 884,890 (3d Cir. 1977)).

In this case, Defendants make a facial attack and, although Plaintiffs still

14

bear the burden of establishing subject matter jurisdiction, "both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Bino v American Bar Association*, 826 F.3d 338 (6th Cir. 2016) (citing *Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197 1975)).

**B. Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1)**

Defendants contend that Plaintiffs lack standing since all their claims under Delaware law are derivative[13] and belong to FSL's bankruptcy estate. Doc. #43-1, PageID#554. Accordingly, they argue this Court lacks subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and that Plaintiffs' Amended Complaint should be dismissed. Henriksen and Advanced CFO incorporate in their Motion "the same arguments" made in their Motion to Dismiss Plaintiff's [original] Complaint, Doc. #21, "to preserve (and not waive) the issue for appeal." Doc. #41-1, PageID#554. They assert no new arguments in support of this branch of their Motion. Although Wootton and Garzella join in the Motion to Dismiss, they offer no arguments in support. Doc. ##46 and 47.

---

[13] A derivative action is brought by a shareholder on behalf of the corporation for injuries sustained by the corporation. A direct action is brought "when the shareholder is injured in a way that is separate and distinct from the injury to the corporation." *Nicole Gas Production, Ltd*, 916 F.3d 566, 576 (6th Cir 2019).

**1. Under the Law of the Case Doctrine, Plaintiffs Have Standing to Allege Violations of the Federal Securities Claims in Count I of the Amended Complaint**

In its Decision and Entry filed April 30, 2021, Doc. #33, the Court found that Plaintiffs had standing, as "investors" and shareholders of FSL, to assert the federal securities claim in Count I of their original Complaint and overruled Advanced CFO and Henriksen's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1), Doc. #21, in which Wootton and Garzella's joined, insofar as Henricksen is concerned. Doc. ##27 and 28.

Under the law of the case doctrine, "findings made at one stage in the litigation should not be reconsidered at subsequent stages of that same litigation." *Dixie Fuel Co., LLC v. Dir., Office of Workers' Comp. Programs*, 820 F.3d 833, 843 (6th Cir. 2016). This doctrine applies "only to issues that have been decided explicitly (or by necessary implication) by a court." *Bowles v. Russell*, 432 F.3d 668, 676-77 (6th Cir. 2005). Although the law of the case doctrine is discretionary, no Defendant asserts any new reason why the Court's earlier decision concerning Plaintiffs' standing to allege claims under the federal securities law should be revisited, much less changed. Accordingly, as to Count I in the Amended Complaint, Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) is overruled.

**2. Plaintiffs Have Standing to Allege Claims of Fraud, Breach of Contract and Unjust Enrichment as Investors in FSL, But Do Not Have Standing as Members of the Board of Directors**

Because the Court previously sustained Defendants' Motion to Dismiss

Plaintiffs' federal securities claims in its Complaint pursuant to Fed. R. Civ. P.

12(b)(6), no determination was then made concerning whether standing existed

for their state law claims. Doc. #33, PageID#28, n. 1.[14]  Because Defendants have

incorporated the "same arguments" made in their earlier Motion to Dismiss, Doc.

#21, and because standing must be demonstrated for each of these claims,

*DaimlerChrysler Corp,* 547 U.S. at 352, (2006), the Court will analyze whether

Plaintiffs have standing for their claims of fraud, breach of fiduciary duty and

unjust enrichment.

For the state law claims in the Amended Complaint, the Court exercises its

diversity jurisdiction under 28 U.S.C. 1332, applies the choice-of-law rules of Ohio,

*Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496 (1941); *Standard Fire Ins.*

*Co. v. Ford Motor Co.,* 723 F.3d 690, 692 (6th Cir. 2013), and applies the "internal

affairs doctrine." *Delay v. Rosenthal Collins Grp., LLC,* No. 2:07-CV-568, 2010 WL

1433362, at *2 (S.D. Ohio Apr. 7, 2010); *Bryan v. DiBella,* No. 08AP-418, 2009-Ohio-

1101, at ¶¶ 12-13 (10th Dist. Ct. App.) (applying internal affairs doctrine to a

choice-of-law dispute). This doctrine is "a conflict of laws principle which

---

[14] Having dismissed the federal securities claims in Count I of the Complaint, the only federal claim, without prejudice to Plaintiffs filing an amended complaint within 14 days subject to the strictures of Fed. R. Civ. P. 11, the Court declined to exercise supplemental jurisdiction over the state law claims and dismissed them without prejudice. Doc. #33, PageID#287.

recognizes that only one State," the law of the state of incorporation, "should

have the authority to regulate a corporation's internal affairs-matters peculiar to

the relationships among or between the corporation and its current officers,

directors, and shareholders." *Bryan*, 2009 Ohio-1038, n.1. Here, Plaintiffs have

alleged they are all shareholders and/or "investors" of FSL and that some were

also members of its Board of Directors. All Defendants were officers of the

Company with one of the Defendants also acting as the Chairman of the Board of

Directors. Accordingly, the Court will apply the law of Delaware, FSL's state of

incorporation.

Defendants argue that under *Tooley v. Donaldson, Lufkin, & Jenrette, Inc.*,

845 A.2d 1031 (Del. 2004), Plaintiffs lack standing to assert the state law claims,

since these claims are derivative and not direct. Under *Tooley*, 845 A.2d at 1031,

determining whether a claim is direct or derivative is resolved by answering two

questions: "[1] [W]ho suffered the alleged harm-the corporation or the suing

stockholder individually-and [2] who would receive the benefit of the recovery or

other remedy?" *Id.* at 1035. If the corporation suffers the harm and would receive

the benefit of the recovery or remedy, the claim is derivative. If, however, the

"suing stockholder" suffers the harm and would receive benefit, the claim is

direct. Although described as a simple and straightforward test, "[C]lassification

of a particular claim as derivative or direct can be difficult." *Brookfield Asset*

*Mgmt., Inc. v. Rosson*, 261 A.3d 1251, 1263 (Del. 2021). In answering the first

question, *Tooley* requires that the complaint be reviewed to determine "the nature

of the wrong alleged and the relief requested." *Id* at 1036.

The nature of the wrong alleged by Plaintiffs is that they became

shareholders and investors in FSL as a result of Defendants' material

misrepresentations to them about FSL's customer contracts, status of its software

and concealment of the terms and covenants of the WBI Note. They further allege

Defendants' misrepresentations and concealments continued after their

investments were made permitting Garzella, as aided by Advanced CFO,

Henriksen and Wootton, to violate the Note's covenants and engage in self-

dealing by paying off Garzella's personal loans.  The relief requested in the

Amended Complaint includes "reimbursement of the amounts invested by

Plaintiffs, recovery for economic harm, interest and investigation expenses." Doc.

#39, PageID#338.

Under *Tooley*, the "claimed direct injury must be independent of any

alleged injury to the corporation" and Plaintiffs "must demonstrate that the duty

breached was owed" to them and that they "can prevail without showing an

injury" to FSL. *Tooley*, 845 A. 2d at 1039. *Tooley* and its progeny, however, "deal

with the specific question of when a cause of action for breach of fiduciary duty or

to enforce rights belonging to the corporation itself must be asserted

derivatively," *NAF Holdings, LLC v. Li & Fung (Trading) Ltd.*, 118 A.3d 175, 176,

2015 WL 3896792 (Del. 2015), and do not apply to personal claims such as fraud.

"[F]raud in connection with the purchase or sale of shares" is a "[q]uintessential

example[ ] of [a] personal claim." *In re Activision Blizzard, Inc. S'holder Litig.*, 124 A.3d 1025, 1056 (Del. Ch. 2015).

Pursuant to the case law referenced above, Plaintiffs, as investors and shareholders in FSL, have standing to assert their state law claims of fraud in Count II, breach of fiduciary duty in Count III and unjust enrichment in Count IV as these are all personal claims. Accordingly, Defendants' Motion to Dismiss is overruled. Plaintiffs, however, also allege in Count III that "Defendants. . .owed to Plaintiffs, several of whom were Board Members, fiduciary duties of loyalty, care, honesty, and avoiding self-dealing." Doc. #39, PageID#336. Any claim asserted by Plaintiffs in their capacity as a member of FSL's Board of Directors is a derivative claim since, under *Tooley*, this would be an injury to the Company and not a direct injury to a Plaintiff as an investor or shareholder. For these reasons, the Court sustains Defendants' Motion to Dismiss Pursuant to Fed. R. 12(b)(1), Doc. #43, for lack of standing as to any claim for breach of fiduciary duty asserted by any Plaintiff as a member of the FSL Board of Directors. The Court will exercise supplemental jurisdiction over direct claims asserted under state law.

## C. Standard of Review for a Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)

Federal Rule of Civil Procedure 8(a) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The complaint must provide the defendant with "fair notice of what the

. . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal of a complaint on the basis that it "fail[s] to state a claim upon which relief can be granted." The moving party bears the burden of showing that the opposing party has failed to adequately state a claim for relief. *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citing *Carver v. Bunch*, 946 F.2d 451, 454-55 (6th Cir. 1991)). The purpose of a motion to dismiss under Rule 12(b)(6) "is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). In ruling on a 12(b)(6) motion, a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Handy-Clay v. City of Memphis,* 695 F.3d 531, 538 (6th Cir. 2012) (quoting *Treesh*, 487 F.3d at 476).

Nevertheless, to survive a motion to dismiss under Rule 12(b)(6), the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Unless the facts alleged show that the plaintiff's claim crosses "the line from conceivable to plausible, [the] complaint must be dismissed." *Id.* Although this standard does not require "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.* at 555. "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than

21

conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). Legal conclusions "must be supported by factual allegations" that give rise to an inference that the defendant is, in fact, liable for the misconduct alleged. *Id.* at 679.

In ruling on a Rule 12(b)(6) motion, a court generally only considers the plaintiff's complaint. If, however, "… a plaintiff references or quotes certain documents, . . . a defendant may attach those documents to its motion to dismiss, and a court can then consider them in resolving the Rule 12(b)(6) motion without converting the motion to dismiss into a Rule 56 motion for summary judgment." *Watermark Senior Living Retirement Communities, Inc. v Morrison Management*, 905 F.3d 421 (6th Cir. 2018).

Defendants argue in their Motion to Dismiss, Doc. #43, that critical allegations in the Amended Complaint, Doc. #39, are identical to those the Court found to be legally deficient in its earlier Decision and Entry Sustaining in Part and Overruling in Part Defendants Henricksen and Advanced CFO's Motion to Dismiss. Doc. #33. Specifically, they contend that the Amended Complaint like the original Complaint, Doc. #1, alleges that Henricksen's scienter consists of not discovering Garzella's self-dealing regarding loan repayment and violation of the covenants of the WBI Note., Doc. #43-1, PageID#559. Although similarities certainly exist between the Complaint, Doc. #1, and the Amended Complaint, Doc. #39, Plaintiffs have now made more detailed and specific factual allegations in support of their claims, including scienter. Additionally, and unlike their original Complaint, Plaintiffs' Amended Complaint includes Exhibits A through T, consisting of nearly

22

200 pages. Doc. #39, PageID##340-534. These include the WBI Term Sheet of which Henricksen and others had knowledge, Exhibit A; the Power Point presentations with the financial information allegedly prepared by Henricksen and shown to Plaintiffs, Exhibits D and M; and emails sent to Garzella and from Henricksen concerning the financial information in these documents, Exhibit H, and how it should be characterized.

Pursuant to *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426 (6th Cir. 2008), in ruling on a motion to dismiss, the Court may consider "the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Id*. at 430. These above-cited exhibits, and others, were referred to by Plaintiffs in the Amended Complaint, Doc. #39, and "even if they are not attached or incorporated by reference," when it is "clear that there exist no material disputed issues of fact regarding the relevance of the document," *Mediacom Se. LLC v. BellSouth Telecomms., Inc.*, 672 F.3d 396, 400 (6th Cir.2012) (internal citations and quotation marks omitted), the Court can consider them without converting this Motion to Dismiss into a motion for summary judgment. *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681 (6th Cir. 2011).

**1. Plaintiffs Have Pled Violations of § 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder and § 20(a) of the Exchange Act in Count I**

Defendants, Henriksen and Advanced CFO, argue that Plaintiffs' federal securities claims in Count I should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). They assert that the Amended Complaint does not plead fraud as required by Fed. R. Civ. P. 9(b) and the Private Securities Litigation Reform Act of 1995 ("PSLRA"), scienter with particularity or that they made any false and misleading statements to Plaintiffs. They contend that even if such statements were made by them, they are within the PSLRA's safe harbor provision and Defendants Henriksen and Advanced CFO are protected from liability, since they were "accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward- looking statement." 15 U.S.C. § 78u-5(c)(1)(A)(i). They argue that if a forward-looking statement is accompanied by meaningful cautionary language, a defendant is immune from liability. *Miller v. Champion Enterprises Inc.*, 346 F.3d 660, 672 (6th Cir. 2003). Defendants Wootton and Garzella join in the Motion but offer no additional reasons for their dismissal.

To plead a securities fraud suit under § 10(b), a plaintiff must allege: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27,

37-38, (2011) (citation and internal quotation marks omitted). As with any fraud

claim, a plaintiff must also satisfy the requirements of Fed. R. Civ. P. 9(b) by

stating with particularity the circumstances constituting fraud. *Dougherty v.*

*Esperion Therapuetics, Inc.*, 905 F.3d 971, 978 (6th Cir. 2018). Accordingly,

Plaintiffs must "(1) specify the statements that the plaintiff contends were

fraudulent, (2) identify the speaker, (3) state where and when the statements were

made, and (4) explain why the statements were fraudulent." *Id.* (citation and

internal quotation marks omitted). In addition to satisfying the requirements

under Rule 9(b), the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15

U.S.C. § 78u-4, et seq., "imposes two additional pleading requirements." These

require Plaintiffs to "'specify each statement alleged to have been misleading'

along with 'the reason or reasons why the statement is misleading,'" *Ind. State*

*Dist. Council of Laborers & Hod Carriers Pension & Welfare Fund v. Omnicare, Inc.*

*(Omnicare I)*, 583 F.3d 935, 942 (6th Cir. 2009) (quoting 15 U.S.C. § 78u-4(b)(1)) and

"state with particularity facts giving rise to a strong inference that the defendant

acted with the required state of mind." *Id.* (quoting 15 U.S.C. § 78u–4(b)(2)).

Scienter is defined as "a mental state embracing intent to deceive,

manipulate, or defraud." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308,

319 (2007) (citation and internal quotation marks omitted). Negligence allegations

"cannot support a securities-fraud claim." *Cty. of Taylor Gen. Employees Ret. Sys.*

*Et al. v. Astec Indus., Inc.*, et al., No. 21-5602, 2022 WL 970290, pp 10 and 15 (6th

Cir. Mar. 31, 2022. To determine whether scienter has been pled, the Court first,

25

as with all Rule 12(b)(6) motions, accepts all allegations as true, considers the complaint in its entirety and asks whether "*all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Id.*, at 323 (emphasis in original). Such an inference does not need to "be irrefutable," yet "it must be more than 'reasonable' or 'permissible' - it must be cogent and compelling, thus strong in light of other explanations." *Id.*, at 324. "A complaint will survive, we hold, only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id.*

A review of the Amended Complaint shows Plaintiffs have complied with Fed. R. Civ. P. 9(b) and the PSLRA, pled scienter with particularity and have alleged false and misleading statements made by all Defendants.

As alleged, misrepresentations and omissions were made to Plaintiffs concerning the terms and conditions of the WBI Note, FSL's contracts with customers and the status of the its software development. Specifically, because Henriksen, Garzella and Wootton negotiated the terms of the WBI Note, all Defendants were aware, at least as of October 30, 2016, that no debt, other than the Company's accounts payable, could be repaid until the five-year WBI Note was repaid in full. Moreover, Plaintiffs allege Henriksen and Wootton reviewed the Note before it was finalized on November 21, 2016, and knew that WBI's consent was required before any of the Investor's promissory notes were repaid.

26

Despite this knowledge, the Amended Complaint alleges the terms and covenants of the WBI Notes were not disclosed to Plaintiffs by Garzella and Wootton, who drafted, negotiated and distributed two-and three-year promissory notes to Plaintiffs or by Wootton, who negotiated the terms of a promissory note with Plaintiff James R. Sever.  Moreover, Garzella's PowerPoint presentations and Investor Materials, and Henriksen's pro formas and balance sheets included in the PowerPoint presentations and/or Investor Materials, omitted any reference to the terms and covenants of the WBI Note.  The Amended Complaint includes the dates these documents were prepared and given to Plaintiffs and alleges when Plaintiffs purchased FSL stock or invested in the promissory notes.  Additionally, Plaintiffs allege Garzella falsely represented to them in the PowerPoint presentations he prepared that FSL had contracts with certain customers and that Henriksen knew the revenue from contracts with FSL was overstated, thereby making the pro forma included in the June 26, 2016, PowerPoint presentation false.  Plaintiffs further allege that emails show Henriksen prepared the financial documents based on Garzella's input and without verifying their accuracy in the accounting system, misrepresented Company debts as preferred stock and "re-worked" the numbers to get "good pro formas." Accordingly, Plaintiffs have pled with particularity the circumstances constituting each Defendants' alleged fraud, as required by Fed. R. Civ. P. 9(b), have attached the documents and emails showing the dates they were made or given to Plaintiffs and have alleged why the representations and omissions are false and misleading.  Scienter has also been

established since "*all* of the facts alleged, taken collectively,[15] give rise to a strong

inference of scienter" and "a reasonable person would deem" its inference

"cogent and at least as compelling as any opposing inference one could draw

from the facts alleged." *Id.* at 323 and 324.

Defendants argue that no liability for securities fraud exists pursuant to the

Private Securities Litigation Reform Act's (PSLRA) safe harbor provision, which

excuses securities fraud liability for forward-looking statements. 15 U.S.C.  § 78u-

5(c)(1)(A)(i). They argue that "[B]ased on the judicial 'bespeaks caution' doctrine,"

*Helwig v. Vencor*, 251 F.3d 540, 548 (6th Cir. 2001) (*en banc*), overruled on other

grounds by *Tellabs*, 551 U.S. at 314, 127 S.Ct. 2499, liability for economic

"projections, statements of plans and objectives, and estimates of future

economic performance" are excused. *Id.* (citing 15 U.S.C. § 78u–5(i)(1)).  The Court

does not agree.

The PSLRA established a statutory safe-harbor for forward-looking

statements. With certain exceptions, "in any private action. . . that is based on an

untrue statement of a material fact or omission of a material fact necessary to

---

[15] In *Frank v. Dana Corp.*, 547 F.3d 564, 571 (6th Cir.2008), the Sixth Circuit recognized that after *Tellabs* and *Matrixx,* its previous pleading standard of analyzing scienter based on consideration of nine "non-exhaustive factors" in *Helwig v. Vencor*, 251 F.3d 540 (6th Cir. 2001), was no longer good law. However, the Sixth Circuit continues to utilize the *Helwig* factors as "helpful in guiding securities fraud." *Pittman v. Unum Group*, 861 Fed. Appx. 51, 54 (6th Cir. 2021) (quoting *Helwig*, 251 F.3d at 552). Accordingly, in analyzing scienter, the Court has considered the nine factors in *Helwig* and finds that factors 2, 3, and 6 are implicated in the Amended Complaint and concludes that scienter is as "cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs*, 551 U.S. at 314.

make the statement not misleading," a defendant "shall not be liable with respect

to any forward-looking statement. . . if and to the extent that—

> (A) the forward-looking statement is—
> (i) identified as a forward-looking statement, and is accompanied
> by meaningful cautionary statements identifying important factors
> that could cause actual results to differ materially from those in the
> forward-looking statement; or
> (ii) immaterial; or
> (B) the plaintiff fails to prove that the forward-looking statement—
> (i) if made by a natural person, was made with actual knowledge by that
> person that the statement was false or misleading; or
> (ii) if made by a business entity[,] was-
> (I) made by or with the approval of an executive officer of that
> entity; and
> (II) made or approved by such officer with actual knowledge by
> that officer that the statement was false or misleading.

15 U.S.C. § 78u–5(c).

"The safe harbor is written in the disjunctive; that is, a defendant is not

liable if the forward-looking statement is identified and accompanied by

meaningful cautionary language or is immaterial or the plaintiff fails to prove that

it was made with actual knowledge that it was false or misleading." *Slayton v.*

*Am. Exp. Co.*, 604 F.3d 758, 772 (2nd 2010) (emphasis added); *See Southland*

*Secs. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 371–72 (5th Cir.2004).

The safe harbor requirement requires that forward-looking statements be

accompanied by "meaningful cautionary statements" which identify "important

factors that could cause actual results to differ materially from those in the

forward-looking statement." 15 U.S.C. § 78u–5(c)(1)(A)(i)." Here, Plaintiffs allege

that all Defendants knew that the terms of the $400,000 five-year WBI Note

prohibited repayment of Plaintiffs' two and three-year promissory notes until such time as the WBI Note had been repaid in full. Doc. #39, PageID#313. This information, an "important factor[s,]" was not disclosed to Plaintiffs in either the December 2016 Private Placement Document ("PPD") or the June 1 or August 1, 2017 Private Placement Memorandum ("PPM'). *Dougherty v. Esperion Therapeutics, Inc.*, 905 F.3d 971, 984 (6th Cir. 2018) (safe harbor provision, which excuses securities fraud liability for forward-looking statements, does not extend to a statement of present or historical fact).

Additionally, "[C]autionary language must be extensive and specific. A vague or blanket (boilerplate) disclaimer which merely warns the reader that the investment has risks will ordinarily be inadequate to prevent misinformation." *Inst. Investors Group v. Avaya, Inc.*, 564 F.3d 242, 256 (3d Cir.2009) (quotation marks, citations, and alterations omitted). Similarly, the Fifth Circuit has held that "[t]he requirement for 'meaningful' cautions calls for 'substantive' company-specific warnings based on a realistic description of the risks applicable to the particular circumstances, not merely a boilerplate litany of generally applicable risk factors." *Southland Secs. Corp.*, 365 F.3d at 372. Defendants' PPM and PPD are merely generalized warnings stating that known and unknown risks exist., *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 244 (5th Cir.2009) (internal quotation marks omitted).

Based on these allegations and at this early stage of the case, where all Plaintiff's allegations must be accepted as true and all reasonable inferences

construed in favor of Plaintiffs, the safe harbor provision of 15 U.S.C. § 78u-5(c)(1)

does not apply.

Plaintiffs have also alleged a claim for violations by each Defendant as

"controlling persons" under § 20(a) of the Exchange Act, 15 U.S.C. § 78t. To

prove a cause of action under this section, Plaintiffs must first prove a violation

under § 10(b) and also show that each Defendant "directly or indirectly controlled

the person liable for the securities law violation." *Id*. 15 U.S.C. § 78t; *PR*

*Diamonds, Inc. v. Chandler*, 364 F.3d 671, 696 (6th Cir.2004). As stated earlier, the

Court has determined that Plaintiffs have sufficiently pled a cause of action under

§ 10(b) of the Exchange Act. Defendants Advanced CFO and Henricksen argue,

however, that even assuming a securities fraud violation, which they dispute,

Plaintiffs' claim under § 20(a) of the Exchange Act fails because they have not pled

facts establishing that they had the power to control the general affairs at FSL and

to influence the corporate policy that resulted in the primary violations.

Although the status of Henricksen, Garzella and Wootton as officers of FSL,

absent more, is not enough to trigger liability under § 20(a), Plaintiffs' Amended

Complaint has alleged that each Defendant had the capacity and power to control

the violator(s). The Amended Complaint alleges that each Defendant knew about

the terms and covenants of the WBI Note and about the promissory notes that

Garzella and Wootton were drafting and distributing to Plaintiffs, notes that could

not be repaid until the WBI Note was repaid in full. As the Treasurer and CFO,

Henricksen prepared the financial information that was disseminated to Plaintiffs

through Garzella's PowerPoints, Doc. #39, PageID#317, and would engage in a "'reworking' of the numbers in order to get a 'good pro forma'" that was shown to Plaintiffs *Id.*, PageID#317. Moreover, through Advanced CFO's contract with FSL, he was responsible for investing and spending funds and overseeing FSL's accounting functions. Thus, Plaintiffs have alleged that Henricksen had the capacity and power to control the financial information that was provided to Plaintiffs in the PowerPoint presentations.

In FSL, Henricksen, Garzella and Wootton were each one of three "high-level executives" and as such "can be presumed to be aware of matters central to their business's operation." *PR Diamonds v. Chandler*, 364 F.3d at 688. "Courts may presume that high-level executives are aware of matters related to their business' operation where the misrepresentations as omissions pertain to 'central, day-to-day operational matters.'" *In re Cardinal Health, Inc. Sec. Litig.*, 426 F.Supp.2d 688, 724 (S.D.Ohio 2006) (Marbley, J.).

Reading the Amended Complaint in its totality, the Court finds that Plaintiffs have alleged that although Henricksen, Garzella and Wootton allegedly chose not to exercise control at FSL, each had the capacity to do so and thus has control person liability under § 20 (a) of the Exchange Act. *In re Nat'l Century Fin. Enterprises, Inc. Fin. Inv. Litig.*, 553 F. Supp. 2d 902, 911, 2008 WL 918708 (S.D. Ohio 2008) (recognizing and applying capacity to control "the most lenient standard" for control person liability) (Graham, J.).

Although these allegations can and will be fleshed out further in discovery,

at this pleading stage of the case, the Motion to Dismiss Count I Pursuant to Fed.

R. Civ. P. 12(b)(6), Doc. #43, is overruled.

### 2. Plaintiffs' Have Alleged Claims under Delaware Law for Fraud, Count II, and as Shareholders for Breach of Fiduciary Duty, Count III, but Have Not Alleged a Claim for Unjust Enrichment, Count IV

Defendants argue that Plaintiffs' state law claims for fraud, breach of

fiduciary duty and unjust enrichment should be dismissed for failure to state a

claim upon which relief can be granted.

Concerning Count II, fraud, Defendants assert that dismissal is required

under Fed. R. Civ. P. 9(b). For the reasons stated earlier in this Decision and Entry,

the Court finds that this count, which incorporates by reference the prior

paragraphs of the Amended Complaint, alleges fraud with particularity.

Additionally, Count II alleges nine separate misrepresentations or omissions

Defendants made, individually and collectively, to Plaintiffs. Accordingly, the

Court overrules the Motion to Dismiss as to Count II of the Amended Complaint.

In Count III, breach of fiduciary duty, Defendants argue that Plaintiffs'

Amended Complaint fails to allege a fiduciary relationship between them and

Henriksen and Advanced CFO and that that there are no allegations that Henriksen

and Advanced CFO owed fiduciary duties to anyone other than FSL. The

Amended Complaint alleges that Plaintiffs are investors in FSL either as

shareholders or via promissory notes. Defendants Henriksen and Wootton are

alleged to be corporate officers of FSL and Garzella is both an officer and the

33

Chairman of the Board of Directors. Officers of Delaware corporations, like directors, owe fiduciary duties of care and loyalty to shareholders. *Gantler v. Stephens*, 965 A.2d 695, 708–09, 2009 WL 188828 (Del. 2009) (shareholders' complaint against corporate officers was sufficient to state a claim for breach of duty of loyalty, where complaint alleged that officers assisted corporate director in sabotaging due diligence, which resulted in withdrawal of merger bid). As to creditors, however, "the general rule is that directors do not owe creditors duties beyond the relevant contractual terms." *N. Am. Catholic Educ. Programming Found., Inc. v. Gheewalla*, 930 A.2d 92, 101 (Del.2007). Accordingly, Defendants' Motion to Dismiss, Doc. #43, is overruled as to Plaintiffs who are investors in FSL as shareholders. The Motion is sustained as to Plaintiffs who are investors in FSL as holders of an FSL promissory note.

Count IV of the Amended Complaint alleges a claim for unjust enrichment. Under Delaware law, Plaintiffs must show (1) an enrichment; (2) an impoverishment; (3) a relation between the enrichment and impoverishment; (4) the absence of justification; and (5) the absence of a remedy provided by law. *Nemec v. Shrader*, 991 A.2d 1120, 2010 WL 1320918 (Del. 2010). The Amended Complaint fails to allege facts showing a relation between any individual Defendants' "enrichment" and any individual Plaintiffs' "impoverishment." Additionally, Plaintiffs do not allege that there is an "absence of a remedy provided by law." Defendants' Motion to Dismiss, Doc. #43, is sustained.

34

**IV. Conclusion**

For the reasons set forth above, the Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1), Doc. #43, is OVERRULED in part and SUSTAINED in part. Defendants' Motion to Dismiss, is OVERRULED as to Plaintiffs' claims in Count I for violations of § 10(b) of the Exchange Act and Rule 10(b)(5) promulgated thereunder, and § 20(a) of the Exchange Act and for violations of state law claims of fraud in Count II, breach of fiduciary duty in Count III and unjust enrichment in Count IV. Defendants' Motion to Dismiss, Doc. #43, is SUSTAINED as to any claim for breach of fiduciary duty asserted by a Plaintiff in his capacity as a member of the FSL Board of Directors.

The Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6), Doc. #43, is SUSTAINED in part and OVERRULED in part. Defendants Motion to Dismiss, Doc. #43, is OVERRULED as to Plaintiffs' claims for federal securities violations of §10(b) of the Exchange Act and Rule 10(b)-5 promulgated thereunder, and § 20(a) of the Exchange Act in Count I, fraud in Count II and Plaintiffs' claim for breach of fiduciary duty in Count III for any Plaintiff who was an FSL shareholder. Defendants Motion to Dismiss, Doc. #43, is SUSTAINED as to Plaintiffs' claim for breach of fiduciary duty in Count III as to Plaintiffs who are investors in FSL as holders of an FSL promissory note and for Plaintiffs' claim for unjust enrichment in Count IV.[16]

---

[16] Although the Court indicated that Plaintiffs had standing under Fed. R. Civ. P. 12(b)(1) to assert a claim for unjust enrichment, the First Amended Complaint fails to state a claim against Defendants under Fed. R. Civ. P. 12(b)(6).

As a result of the above, all claims set forth in the Amended Complaint, Doc. #39, remain for trial, save and excepting any claim for breach of fiduciary duty asserted in Count III by a Plaintiff in his capacity as a member of the FSL Board of Directors, Plaintiffs' claim for breach of fiduciary duty in Count III as to Plaintiffs who are investors in FSL as holders of an FSL promissory note and for Plaintiffs' claim in Count IV for unjust enrichment.

Date: April 7, 2022

WALTER H. RICE
UNITED STATES DISTRICT JUDGE